HERRICK, FEINSTEIN LLP
*Attorneys for MKF Management LLC*
Paul Rubin.
2 Park Avenue
New York, New York 10016
(212) 592-1400
(212) 592-1500 (fax)
prubin@herrick.com

Hearing Date: June 22, 2011 at 1:00 p.m.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------x

In re                                                  Chapter 11

THIRD TORO FAMILY LIMITED         Case No. 11-11723 (SHL)
PARTNERSHIP,

                   Debtor.
---------------------------------------------------------x

## JOINDER OF MKF MANAGEMENT LLC IN SUPPORT OF MOTION BY UNITED STATES TRUSTEE FOR AN ORDER TO CONVERT THIS CHAPTER 11 CASE TO A CHAPTER 7 CASE

MKF Management LLC ("MKF"), a secured creditor in the above-captioned chapter 11 case (the "Case") filed by Third Toro Family Limited Partnership (the "Debtor"), hereby joins in the motion (the "Motion")[Docket No. 8][1] of the United States Trustee (the "UST") seeking an order converting this single asset real estate case to one under chapter 7 of title 11 of the United States Code (the "Bankruptcy Code"), and respectfully represents as follows:

## INTRODUCTION

1. The Motion is based, in part, upon the Debtor's failure to retain counsel to represent it in these chapter 11 proceedings. That failure has not been remedied. Though an

---

[1] The Motion seeks dismissal of this case or its conversion to one under chapter 7 of the Bankruptcy Code. For the reasons explained below, MKF supports the UST's request for conversion of this case but does not believe that dismissal would serve the best interests of the Debtor's creditors.

application to retain counsel was filed in response to the Motion, the firm which the Debtor seeks to retain, Kornfeld & Associates, P.C., ("Kornfeld Firm"), is not disinterested, represents interests that are adverse to the estate and cannot be retained to represent the Debtor. The Kornfeld Firm represents the Debtor's general partner, Third Toro Real Estate Corporation (the "GP") and Sixth Toro Family Limited Partnership ("Sixth Toro"), the Debtor's affiliate who leases space at the Property. These representations began pre-petition and have continued post-petition. Notably, these representations of the Debtor's corporate general partner and of a significant tenant affiliate were not disclosed in any of the papers submitted in connection with the Debtor's application to retain the Kornfeld Firm (Docket No. 12).

2. Before this case was commenced but after the first mortgagee commenced a foreclosure action, the Debtor's principal, Helmer Toro, caused the Debtor to drastically reduce the monthly rent it charges Sixth Toro. Mr. Toro signed the lease modification for both the Debtor and Sixth Toro. The Kornfeld Firm is unable to seek to reverse this blatant self-dealing, since it served as counsel for both of these entities in the foreclosure action.

3. MKF believes that the Kornfeld Firm's pre- and post-petition representation of GP and Sixth Toro constitutes a representation of one or more interests adverse to the Debtor's estate, represents a disabling conflict of interest, and that the Kornfeld Firm cannot be retained as chapter 11 counsel in this Case. Thus, the Debtor has not properly addressed one of the primary grounds for conversion set forth in the UST's Motion.

4. Equally disturbing is the recent revelation that the Debtor has-- without any notice to the Court, the UST or any of its creditors -- completely abandoned and forfeited control over its operations and this case, including the process of formulating a plan of reorganization, to an affiliate of Griffon Cosmo LLC ("Griffon"), the secured creditor holding a first priority mortgage

on the Debtor's real property (the "Property"). We are told by counsel to Griffon that this was accomplished pursuant to a written voting trust agreement that Griffon and the Debtor have refused to divulge.[2] Griffon and its affiliate to whom voting rights were reportedly assigned, 31 Rockaway LLC ("31 Rockaway"), share a common principal, are hopelessly conflicted, and incapable of discharging their fiduciary duties to the Debtor's estate and creditor body.

5. Before entering into this voting trust agreement that is reportedly dated June 7, 2011, notwithstanding its right under section 543(a) of the Bankruptcy Code to operate its property, the Debtor had declined to re-take control over its building from the receiver appointed in the first mortgagee's foreclosure action. In other words, since inception of this case, the Debtor has continuously and unequivocally demonstrated its willingness to sit back and permit others to perform the duties and functions of a chapter 11 debtor

6. The Debtor's abdication of its duties and responsibilities in connection with this case constitutes gross mismanagement and "cause" for conversion of this case to one under chapter 7 of the Bankruptcy Code.

7. Moreover, it does not appear that the *Debtor* received any consideration for the transfer of control under the secret terms of the voting trust agreement with the first mortgagee's affiliate (although no one would be surprised if some consideration inured to the benefit of the Debtor's principal, Helmer Toro).

8. Lastly, without any notice or a hearing (under Rule 9019 of the Federal Rules of Bankruptcy Procedure or otherwise) and within days of granting control over its property, the plan negotiation process and this case to 31 Rockaway, the Debtor released, with prejudice, the

---

[2] To be clear, MKF does not waive any right to seek equitable subordination of any claim Griffon Cosmo may hold in this case based on facts known to date or that may hereafter become known.

counterclaims and affirmative defenses it had asserted in the foreclosure action against the first mortgagee.

9. This troubling pattern of behavior demonstrates that creditors in this case need the protection afforded by a truly independent fiduciary, a chapter 7 trustee. For the reasons set forth herein, and those advanced by the UST in the Motion and its supplemental submissions to the Court, which MKF adopts and joins, conversion of this case to chapter 7 is respectfully requested.

## BACKGROUND

10. This case was commenced by the Debtor's filing of a voluntary chapter 11 petition in this Court on April 13, 2011 (the "Petition Date").

11. According to the Affidavit of Helmer Toro, filed on May 31, 2011 (Docket No. 16) (the "1007-2 Affidavit"), the Debtor is "in the business of owning and operating the real property located at 639 W. 46th Street, New York, New York 10036" (the "Property"). (1007-2 Affidavit, ¶ 3).

12. Prior to the Petition Date, Mr. Toro caused three of the Debtor's affiliates to file their own chapter 11 petitions in this Court: (1) Garden Operations Realty, LP (Case No. 11-10668 (SHL)); (2) First Toro Family Limited Partnership (Case No. 11-11229 (SHL)); and (3) 35 Real Estate, LP (Case No. 11-11489 (SHL)). Upon information and belief, each of these other three cases is headed toward appointment of a trustee or dismissal.

## RELEVANT FACTS

13. On or about May 25, 2010, First American International Bank, the predecessor in interest to Griffon, commenced in the Supreme Court of the State of New York an action (the "Foreclosure Action") against, among other parties, the Debtor, the GP and Sixth Toro

4

(collectively, the "Toro Defendants"), seeking to foreclose its mortgage encumbering the Property.

14. Shortly thereafter, on June 25, 2010, Helmer Toro caused the Debtor and Sixth Toro to enter into a "Lease Modification" that he signed for each entity whereby the rent payable to the Debtor was drastically reduced from $416,000 to $60,000 per month, retroactive to January 1, 2010, and Sixth Toro was also granted a "right of first refusal" on any offer the Debtor might make to another tenant. A copy of the lease modification is annexed hereto as Exhibit "A".

15. On or about August 16, 2010, the Toro Defendants filed an answer in the Foreclosure Action, a copy of which is annexed hereto as Exhibit "B" (the "Answer"). The Answer asserts various counterclaims including one for breach of contract (the "Counterclaims").

16. MKF is the owner and holder of a second-priority mortgage dated as of June 9,2008 encumbering the Property, which secured a note in the amount of $1,000,000 originally executed by the Debtor in favor of Benedict A. Silverman.

17. As MKF previously stated at the status conference held in this case on May 16, 2011, the pendency of the first mortgagee's Foreclosure Action gave rise under New York law to a right on the part of MKF, as second mortgagee, to redeem the first mortgage debt held by Griffon.

18. By letter dated April 19, 2011, counsel for MKF wrote counsel for Griffon Cosmo confirming that MKF wanted to exercise that right of redemption and requested a written payoff statement listing all amounts due under the first mortgage and wiring instructions to which MKF

should send payment. See Exhibit C. Despite repeated attempts to elicit a response from Griffon Cosmo in this regard, none was forthcoming.

19. On June 2, 2011, MKF exercised its redemption rights (as it previously advised the Court and Griffon that it would) by tendering to Griffon the full amount of all monies due on its first mortgage secured claim. But Griffon refused the tender.[3]

20. On June 7, 2011, MKF wrote to Debtor's counsel advising him of the tender and requesting that he contact MKF's counsel to discuss formulation of a plan of reorganization for this case.

21. By letter dated June 13, 2011, in response to MKF's tender of payment to Griffon, and in response to MKF's offer to negotiate a plan with the Debtor--which was apparently referred to Griffon's counsel--Griffon's counsel Mark Frankel, Esq. advised MKF as follows:

> You should also be aware that in furtherance of plan discussions, as of June 7, 2011, Helmer Toro[4] and 31 Rockaway Avenue LLC ("31 Rockaway") entered into a voting trust agreement, whereby <u>31 Rockaway LLC has gained voting control of all of the shares of Third Toro Real Estate Corp., ("GP") the Debtor's general partner.</u> 31 Rockaway has been charged with creating a plan of reorganization for the Debtor. The Debtor, therefore, forwarded your request to discuss a plan of reorganization to 31 Rockaway. Future correspondence by MKF regarding a plan of reorganization should be directed to Michael Shah, President of 31 Rockaway, at 149 Madison Ave, Suite 701, New York, New York 10016. (emphasis added).

A copy of that letter (the "Frankel Letter") is annexed hereto as Exhibit "D",

---

[3] Under New York law, MKF is entitled to redeem and subrogate to the rights of Griffon, and to compel assignment of the first mortgage from Griffon to MKF. See Venture I. Inc. v. Voutsinas, 8 A.D.3d 475, 778 N.Y.S.2d 311, 312 (2d Dep't 2004). MKF reserves all of its rights to compel Griffon to accept the tender and assign the first mortgage to MKF. MKF stands ready to make the payment which Griffon has refused to accept.

[4] Helmer Toro is the sole shareholder and sole director of Third Toro Real Estate Corp. according to the Written Consent of Sole Shareholder and Sole Director of Third Toro Real Estate Corp. (a copy of which is annexed hereto as Exhibit "I"), which was provided to MKF's counsel.

22. Thus, according to the Frankel Letter, the Debtor ceded control over its operations and this case, including the formulation and prosecution of a plan, to 31 Rockaway, an affiliate of Griffon. According to his *Affidavit in Response to Defendants' Opposition to Receiver's Application to Hold Defendants in Contempt*, filed in the Foreclosure Action in the Supreme Court of the State of New York (a copy of which is annexed hereto as Exhibit "E"), Michael Shah, the President of 31 Rockaway, is also a principal of Griffon.

23. This abdication, to a secured creditor, of responsibility to carry out the Debtor's fiduciary duties owed to its estate and creditors, was apparently effectuated without provision of any consideration to the Debtor or its estate. Although one may presume that the Debtor's principal, Mr. Helmer Toro, would have demanded and received *some* consideration in connection with this ceding of control, the terms under which voting control over the Debtor was transferred remains concealed.

24. On June 14, 2011 in an attempt to discover the consideration for, and the terms under which the Debtor ceded control over its operations and this case to a secured creditor, counsel to MKF, wrote requesting a copy of the voting trust agreement referenced in the Frankel Letter.

25. By e-mail dated June 14, 2011 (the "Shah E-Mail"), a copy of which is annexed hereto as Exhibit "F", Mr. Shah denied counsel's request, stating that the voting trust agreement was an internal document "relating to the debtor's corporate governance." Mr. Shah's refusal to share such basic information with a creditor in this case, on the basis that the voting trust agreement relates to the Debtor's corporate governance, reflects a gross misunderstanding of the fiduciary duties of a debtor-in-possession and is indicative of his complete inability to discharge the Debtor's fiduciary duties to the estate and its creditors. It is apparent that Mr. Shah's

HF 6571817v.2 #15230/0002

position as principal of Griffin Cosmo--an interest adverse to the Debtor's estate--interferes with the judgment he might exercise on behalf of the Debtor through 31 Rockaway.

26. The Frankel Letter also references the dismissal of the Foreclosure Action, which was also fraught with irregularity. On or about June 3, in apparent anticipation of Mr. Toro's ceding of control over the Debtor to the first mortgagee, the Debtor, the GP and Sixth Toro entered into a stipulation (the "Dismissal Stipulation"), signed on their behalf by the Kornfeld Firm as their counsel, discontinuing without prejudice the Foreclosure Action, and withdrawing with prejudice the affirmative defenses and counterclaims these defendants had asserted against the first mortgagee in their answer in the Foreclosure Action. A copy of the Dismissal Stipulation is annexed hereto as Exhibit "G". The Debtor did not seek authorization from this Court to enter into the Dismissal Stipulation, nor did it provide any prior notice to creditors, the UST or other parties in interest in this case of its intent to enter into the Dismissal Stipulation.

27. The reference in the Frankel Letter to the Dismissal Stipulation led MKF to review the docket in the Foreclosure Action. That review led to the discovery that the Kornfeld Firm not only represented the GP and Sixth Toro before this case was commenced (see Substitution of Counsel annexed hereto as Exhibit "H"), but also continued such representations post-petition. This is extraordinary. Neither of these representations were disclosed in the Kornfeld retention application.

28. On May 9, 2011, the UST filed its Motion arguing that conversion of the Case is warranted due to the Debtor's failure to retain counsel, failure to timely file schedules and gross mismanagement. In an effort to stave off conversion, the Debtor thereafter filed an application to retain counsel (Docket No. 12), the 1007-2 Affidavit (Docket No. 16), its schedules of assets and liabilities (Docket No. 11) (collectively, the "Schedules") and its Statement of Financial

8

Affairs (Docket No. 10). The Debtor's Schedules list Griffon as holding a $5.3 million first mortgage secured claim, and MKF as holding a $1.2 million second mortgage secured claim.

## **ARGUMENT**

### **CAUSE EXISTS FOR CONVERSION OF THIS CASE TO CHAPTER 7**

29. Conversion of this Case to one under chapter 7 of the Bankruptcy Code is warranted for several reasons. First, "cause" for conversion exists due to the Debtor's failure to retain counsel. Because of the Kornfeld Firm's disabling conflicts, it cannot be retained as chapter 11 counsel, and the Debtor remains without counsel. Next, the abdication of control over the Debtor and its conduct in this case to an affiliate of the first mortgagee, constitutes a breach of the Debtor's fiduciary duties to the estate and its creditors thereby establishing "cause." Furthermore, control over the Debtor and this case was apparently granted to 31 Rockaway without consideration to the Debtor and, therefore, constitutes gross mismanagement of the estate. Lastly, the Debtor's withdrawal, with prejudice, of its counterclaims and affirmative defenses in the Foreclosure Action without any apparent consideration and without approval of this Court or notice to parties in interest constitutes unauthorized conduct and gross mismanagement warranting conversion.

30. It is clear from the foregoing that control of this Case cannot remain in the hands of either Helmer Toro or Michael Shah, who is identified as President of 31 Rockaway in the Frankel Letter. A chapter 7 trustee, who is an independent fiduciary, is required to protect the interests of all creditors and stakeholders in this Case.

31. Bankruptcy Code § 1112(b)(1), as amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), provides in relevant part:

9

> [O]n request of a party in interest, and after notice and a hearing, absent unusual circumstances specifically identified by the court that establish that the requested conversion or dismissal is not in the best interests of creditors and the estate, the court shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, if the movant establishes cause.

Section 1112(b)(1).

32. Cause is a flexible standard, subject to the court's discretion. In re Products Int'l Co., 395 B.R. 101, 107 (Bankr. D. Ariz. 2008). Sixteen illustrative examples of "cause" are listed in § 1112(b)(4), including gross mismanagement of the estate and the unauthorized use of cash collateral substantially harmful to 1 or more creditors. As the legislative history to § 1112 makes clear, this list of circumstances that constitute cause for conversion "is not exhaustive. The court will be able to consider other factors as they arise, and to use its equitable powers to reach an appropriate result in individual cases." H. Rep. No. 95-595, 95th Cong., 1st Sess. 405, reprinted in 1978 U.S. Cong. Code & Admin. News 6361-6362; S. Rep. No. 95-989, 95th Cong., 2d Sess. 117, reprinted in 1978 U.S. Cong. Code & Admin. News 5903. See also, In re Products Int'l Co., supra, 395 B.R. at 107; In re Gateway Access Solutions, Inc., 374 B.R. 556, 561 (Bankr. M.D. Pa. 2007); In re 3 Ram, Inc., 343 B.R. 113, 117 (Bankr. E.D. Pa. 2006).

**1. Cause for Conversion Exists Due to Debtor's Failure to Retain Disinterested Counsel**

33. As set forth in the Motion, a corporation, or other artificial entity, may only appear in federal courts through counsel. Rowland v. California Men's Colony, 113 S. Ct. 716, 721 (1993); Jones v. Niagara Frontier Transp. Auth., 722 F.2d 20, 22 (2d Cir. 1983). The Debtor's failure to retain suitable counsel without disabling conflicts of interest warrants conversion of the Case for "cause."

10

34. As set forth above, the Debtor did not move to retain counsel in this case until May 13, 2011, which was *after* the UST filed its Motion. The Debtor's chosen counsel, however, is not disinterested. It has represented before and after commencement of this case both the GP and Sixth Toro, the tenant whose rent was mysteriously reduced after the prior holder of the first mortgage commenced its foreclosure action. The Kornfeld Firm's representation of Sixth Toro, the Debtor's non-debtor tenant, is clearly the representation of an interest adverse to the Debtor's estate.

35. A debtor's counsel must "tender undivided loyalty and provide untainted advice and assistance in furtherance of their fiduciary responsibilities." <u>Beal Bank v. Waters Edge Ltd. P'ship</u>, 248 B.R. 668, 695 (Bankr. D. Mass. 2000). The Kornfeld Firm's representation of the GP and Sixth Toro render it incapable of rendering such undivided loyalty and providing such untainted advice. For example, as set forth above, the Debtor and Sixth Toro entered into what appears to be a gratuitous Lease Amendment which dramatically reduced the monthly rent to be paid by Sixth Toro to the Debtor from $416,000 to $60,000. Thus, it appears that the Debtor holds valid claims against Sixth Toro for amounts that are far from inconsequential to this case. It is obvious that the Kornfeld Firm cannot sue its own client, Sixth Toro.

36. Counsel also cannot represent both GP and the Debtor. <u>See</u> <u>Rome v. Braunstein</u>, 19 F.3d 54, 60-61 (1st Cir. 1994) (denying fee application of debtor's counsel that represented both sole shareholder/president of debtor and family member of shareholder prior to the petition date); <u>In re EZ Links Golf, LLC</u>, 317 B.R. 858, 864 (Bankr. D. Colo. 2004) (denying retention of debtor's proposed counsel because it had important and consequential relationships with parties that were inseparable with the debtor and, although proposed counsel did not hold an adverse interest, it was therefore not disinterested).

HF 6571817v.2 #15230/0002

37. Because the Kornfeld Firm is not disinterested and has disabling conflicts of interest, it may not be retained as counsel to the Debtor. The Debtor has not filed any application to retain any other counsel and, accordingly, remains in this Case without counsel. Therefore, cause exists to convert this Case to one under chapter 7 of the Bankruptcy Code.

**2.** **The Debtor's Abdication of Its Fiduciary Responsibilities and its Giveaways to Griffon Constitute Gross Mismanagement of the Estate and, Therefore, "Cause" for Conversion**

38. "Cause" for conversion is also manifested by the Debtor's ceding control of this Case and its operations to 31 Rockaway in addition to its apparent relinquishments of rights and control to Griffon and 31 Rockaway. A debtor in possession has a fiduciary duty to preserve and protect estate assets and to maximize the value of the estate for the benefit of its creditors. Official Comm. of Unsecured Creditors of Cybergenics Corp. v. Chinery, 330 F.3d 548, 573 (3d Cir. 2003) (en banc); In re Marvel Entm't Group, 140 F.3d 463, 474 (3rd Cir. 1998); In re Haluz, Inc., 665 F.2d 213, 217 (8th Cir. 1981); Hirsch v. Pennsylvania Textile Corp., Inc. (In re Centennial Textiles, Inc.), 227 B.R. 606, 612 (S.D.N.Y. 1998); In re Nautilus of New Mexico, Inc., 83 B.R. 784, 789 (Bankr. D. N.M. 1988); In re Four Square Broad., Inc., 77 B.R. 404, 407 (Bankr. W.D.N.Y. 1987); In re Russell, 60 B.R. 42, 47 (Bankr. W.D. Ark. 1985); In re UNR Indus., 30 B.R. 609 (Bankr. N.D. Ill. 1983). A debtor in possession bears essentially the same fiduciary obligation to creditors as a trustee. Commodity Futures Trading Comm'n v. Weintraub, 471 U.S. 343, 355 (1985); Cybergenics Corp., supra, 30 F.3d at 573; In re Russell, supra, 60 B.R. at 47. "Indeed, the willingness of courts to leave debtors in possession 'is premised upon an assurance that the officers and managing employees can be depended upon to carry out the fiduciary responsibilities of a trustee.'" Weintraub, supra, 471 U.S. at 355 (*citing* Wolf v. Weinstein, 372 U.S. 633, 651 (1963)). "As a *de jure* trustee, the debtor in possession

holds its powers in trust for the benefit of creditors." In re V. Savino Oil & Heating Co., 99 B.R. 518, 524-525 (Bankr. E.D.N.Y. 1989).

39. The nature of the fiduciary duty owed by a debtor-in-possession to its creditors is analogous to the corporate fiduciary duties owed by directors to shareholders under state law and includes the duties of care and loyalty. In re Bellevue Place Assocs., 171 B.R. 615, 624 (Bankr. N.D. Ill.) (*citing* Fulton State Bank v. Schipper (In re Schipper), 933 F.2d 513, 515 (7th Cir. 1991)), aff'd, 1994 U.S. Dist. LEXIS 17409 (N.D. Ill. Dec. 6, 1994). A debtor in possession is bound by a duty of loyalty that includes an obligation to refrain from self-dealing, and to avoid conflicts of interest and the appearance of impropriety. See In re Bellevue Place Assocs., supra, 171 B.R. at 624; In re San Juan Hotel, 847 F.2d 931, 950 (1st Cir. 1988). As a fiduciary, a debtor in possession is "required to turn square corners and avoid conduct that would prejudice the rights of those whose interests he is required to protect." In re Woodson, 839 F.2d 610, 614 (9th Cir. 1988).

40. Every debtor must be controlled by someone willing to fulfill the fiduciary obligations of a debtor in possession, which means the person must act at all times with undivided loyalty, refrain from engaging in self-dealing, and act free of conflicts of interest. The debtor in possession may not act solely on its self-interest to the exclusion of the other interests which the debtor-in-possession has the fiduciary obligation to protect. In re Bellevue Place Assocs., supra, 171 B.R. at 624. The United States Supreme Court has noted that: ". . . bankruptcy causes fundamental changes in the nature of corporate relationships. One of the painful facts of bankruptcy is that the interests of shareholders become subordinated to the interests of creditors." Weintraub, supra, 471 U.S. at 355. An individual who continuously allows his self-interest to interfere with his carrying out the fiduciary obligations of a debtor-in-

13

HF 6571817v.2 #15230/0002

possession should not be permitted to function as a debtor-in-possession. "A trustee will be appointed when the debtor-in-possession is incapable of performing his fiduciary duties." See, e.g., In re Russell, supra, 60 B.R. at 45 (collecting cases).

41. A debtor's abdication of its fiduciary responsibilities to another warrants the appointment of an independent fiduciary such as a chapter 7 trustee. See In re Bellevue Place Assocs., 171 B.R. 615 (Bankr. N.D. Ill. 1994) (appointing trustee where debtor granted control over its operations and chapter 11 case to secured creditor); In re IPOFA West Oaks Mall, LP, 2007 WL 3223295 (Bankr. E.D. Va.) October 29, 2007, No. 07-33649-KRH (cause existed for appointment of trustee where debtor abdicated control over its affairs to affiliated debtors in a separate proceeding). This is especially true if this happens without prior authorization from the Bankruptcy Court upon prior notice to creditors and the UST.

42. The facts in Bellevue Place Associates are similar to those present here. There, a debtor, shortly before filing a chapter 11 petition, in a "master Agreement" with one of its secured creditors, contracted away control of a workout and reorganization process to that creditor. In re Bellevue Place Assocs., 171 B.R. at 619, 620. In addition, as is likely the case here the Bellevue Place debtor "gave up [other] potentially valuable rights" as part of the agreement in the form of claims against the secured lender. Id., at 621, 622. Here, the voting trust agreement has been concealed and the full scope and extent of the agreements or understanding between the entities controlled by Helmer Toro and Mr. Shah is unknown. In Bellevue Place Associates, shortly after the chapter 11 filing, the debtor, controlled by its secured lender, filed a plan of reorganization which provided for the full payment of trade creditors and the payment to its non-controlling secured creditor of the value of its security

interest plus 10% of net proceeds of a sale or refinancing on account of the non-controlling secured creditor's deficiency claim. Id., at 622.

43. But the non-controlling secured creditor argued that the appointment of an independent fiduciary trustee (in that case a chapter 11 trustee) was warranted because "under the terms of the Master Agreement, [the debtor] is deprived of the ability to discharge duties, particularly its fiduciary duties, to all creditors and equity security holders as a debtor-in-possession." Id., at 623. The Bellevue Place court agreed concluding that "such inability to fulfill fiduciary duties of a debtor-in-possession is itself cause to appoint a trustee." Id., at 623. As the court explained:

> Here, the debtor is not free to exercise it's fiduciary duties as a debtor-in-possession. As a result of the Master Agreement, the debtor in this case is under the complete control and direction of one secured creditor -- Meridien. Under the terms of the Master Agreement, Meridien's control over the debtor does not compare to a bankruptcy case where a secured creditor exercises control over the debtor by, for example, restricting the use of cash collateral so as to threaten the debtor's ability to continue operating its business. Generally, in such a situation, a debtor and its counsel work for themselves and continue to make their own decisions; in contrast, in this case, BPA [the debtor] and its counsel cannot make independent decisions and cannot take any significant action without Meridien's permission.

Id., at 624.

44. The Bellevue Place found as follows:

> In sum, the Court concludes that the debtor-in-possession lacks any ability to exercise its fiduciary duties to all creditors and equity holders, which duties are imposed upon it by virtue of its status as a debtor-in-possession. This inability constitutes cause to order the appointment of a trustee pursuant to § 1104(a)(1).

Id., at 624.

15

45. Like the Bellevue Place court, this Court is presented with a debtor-in-possession in name only. First, the Debtor acquiesced in the continuation of a court-appointed receiver to collect rents generated by the Property - its only significant asset.

46. Then, for no apparent consideration to the *Debtor* (as opposed to Mr. Toro), the Debtor's general partner, represented by the Kornfeld Firm, assigned all of its voting rights to an affiliate of a secured creditor controlled by Mr. Shah. That assignment deprived the Debtor of any ability to discharge its fiduciary duties to all creditors and stakeholders in this Case as a debtor-in-possession. That the assignment occurred post-petition without any notice whatsoever to this Court, the UST or creditors and other stakeholders in this case only underscores the need for an independent fiduciary.

47. Moreover, the utter lack of transparency regarding this transaction was exacerbated by the refusal of Mr. Shah to release a copy of the voting trust agreement to MKF. Such behavior is contrary to the manner in which one who controls a debtor-in-possession must act. See In re Savino Oil & Heating Co., Inc., 99 B.R. at 526 ("[o]pen, honest and straightforward disclosure to the Court and creditors is intrinsic to the entire reorganization process and begins on day one, with the filing of the Chapter 11 petition.").

48. In re IPOFA West Oaks Mall, LP, is also instructive. There, the debtor, which filed a voluntary petition in the United States Bankruptcy Court for the Eastern District of Virginia, was controlled by an individual, Edward H. Okun, by virtue of his ownership interest in the debtor's parent. Mr. Okun was also the sole member of other entities known as the 1031 Tax Group, LLC, et. al. (collectively, the "New York Debtors") which filed their own bankruptcy petitions in this Court. In re IPOFA West Oaks Mall, LP, 2007 WL 3223295 at *1. Mr. Okun entered into an agreement under which he conveyed "all right, title, and interest that Okun has in

certain assets that include his ownership interest in the Debtors" to the New York Debtors and ceded to them the right to "control and direct the course of the Debtors' reorganization in these cases." Id., at *1. The court found that the abdication of the Debtors' ability to run its own affairs and chapter 11 case constituted "incompetence or gross mismanagement of the affairs of the debtor" and remarked:

> Here, there is cause to appoint a Chapter 11 Trustee as the designated representative of the debtor in possession is unable to fulfill the obligations he owes to the Debtors' bankruptcy estates to act as an independent fiduciary representative. By signing the Agreement with the New York Debtors, Okun, abdicated his duty to manage these Debtors in a way that would benefit the creditors of these estates. As no independent fiduciary of the Debtors exists to conduct the Debtors' reorganization, the Debtors' creditors are entitled to the immediate appointment of an independent trustee to represent the interests of these Debtors' estates under both provisions of § 1104(a)(1) and (2) of the Bankruptcy Code.

Id., at *4.

49. Although the Bellevue Place and IPOFA West Oaks Mall cases involved motions for the appointment of a chapter 11 trustee, their reasoning applies equally here where MKF and the UST seek conversion with the resultant appointment of a chapter 7 trustee. In both instances, the creditors and stakeholders require the appointment of an independent fiduciary to fill the breach left open by the debtors' abdication of control over their cases. Moreover, "gross mismanagement" is listed as constituting "cause" under both section 1104 (chapter 11 trustee) and 1112(b)(4) (chapter 7 trustee). Thus, the Debtor's abdication of its rights and responsibilities to Mr. Shah and 31 Rockaway constitutes "cause" for conversion of the Case to one under chapter 7 of the Bankruptcy Code as do the Debtor's giveaways of claims and rights to 31 Rockaway without any consideration.

## CONVERSION OF THE DEBTOR'S CASE TO A CASE UNDER CHAPTER 7 IS IN THE BEST INTERESTS OF CREDITORS AND THE ESTATE

50. Once cause is demonstrated, the court must determine whether conversion or dismissal is in the best interests of creditors and the estate. In making this determination, courts consider: (i) whether a trustee is necessary to investigate and pursue the estates claims; (ii) whether the debtor would simply refile another case upon dismissal; and (iii) whether the debtor engaged in misconduct such that creditors need a chapter 7 trustee to protect their interests. See Rollex Corp. v. Associated Materials, Inc. (In re Superior Siding & Window, Inc.), 14 F.3d 240, 243 (4th Cir. 1994) (vacating dismissal order and remanding with instructions to consider whether conversion in best interest of creditors where the estate had significant avoidance actions); In re PRS Ins. Group, supra, 274 B.R. at 389 (appointing trustee to investigate avoidance claims in the best interest of creditors); In re Tel-Net, supra, 105 B.R. at 595 (same); In re Evans, supra, 48 B.R at 49 (same); In re Staff Inv. Co., 146 B.R. 256, 261-62 (Bankr. E.D. Cal. 1992) (in revoking prior order of dismissal, court found that the debtor had refiled new chapter 7 case after dismissal and that this action was contrary to the interests of a secured creditor); In re Mobile Freezers, Inc., 146 B.R. 1000, 1005-08 (S.D. Ala. 1992), aff'd, 14 F.3d 57 (11th Cir.), cert. denied, 513 U.S. 807 (1994) (reversing bankruptcy order and remanding with instructions to convert case to chapter 7 where debtor's management had engaged in misconduct).

51. Here, the first and third factors clearly favor conversion and appointment of a chapter 7 trustee. First, a chapter 7 trustee is required to investigate and determine the circumstances under which the Debtor's right to run its business and chapter 11 case and its counterclaims against Griffon were forfeited, perhaps without any consideration to the estate. That investigation may reveal claims against either Mr. Toro, Griffon and perhaps others.

18

Secondly, both the transfer of rights and assets to Griffon and its affiliate, and the opaque manner in which such transfers occurred, demonstrate the need to protect the interests of creditors in this case from misconduct of the Debtor, Griffon or its shill, 31 Rockaway. The refusal of Mr. Shah to turn over a copy of the voting trust agreement (a position in which both Mr. Frankel and Mr. Kornfeld apparently acquiesced), is not only anathema to the proper conduct of a fiduciary in chapter 11, but may also be the tip of the iceberg. MKF respectfully submits that the Court cannot allow such conduct to continue and that a conversion to chapter 7 is necessary to protect the rights of creditors.

52. Moreover, this is a single asset real estate case and there is no reason for the Case to remain in chapter 11. According to the Debtor's schedules, there exists equity in the Property (although there are tax liens which are not listed as secured claims by the Debtor) and the estate would best be maximized by the sale of the Property by a chapter 7 trustee. Moreover, the sale of the Property would be accomplished more expeditiously and efficiently by a chapter 7 trustee.

WHEREFORE, for all of the foregoing reasons, MKF respectfully requests that the Case be converted to one under chapter 7 of the Bankruptcy Code and for such other and further relief as this Court deems just and proper.

Dated: New York, New York
       June 21, 2011

                        HERRICK, FEINSTEIN LLP

                        By: /s/ Paul Rubin
                             Paul Rubin
                             prubin@herrick.com

                        2 Park Avenue
                        New York, NY 10016
                        (212) 592-1400

                        *Attorneys for MKF Management LLC.*