KORNFELD & ASSOCIATES, P.C.
*Attorneys for Debtor*
Randy M. Kornfeld, Esq.
570 Lexington Avenue, 17th Floor
New York, New York 10022
(212) 759-6767

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---

In re:

    THIRD TORO FAMILY LIMITED
    PARTNERSHIP,

                                Debtor.

Case No. 11-11723-SHL
Chapter 11

---

# NOTICE OF HEARING ON DEBTOR'S MOTION FOR AUTHORITY TO OBTAIN POST-PETITION SECURED FINANCING PURSUANT TO 11 U.S.C. §§364(c) AND/OR (d) AND 507(b) AND GRANTING LIENS ON A SECURED AND PRIORITY BASIS AND AUTHORIZING ADEQUATE PROTECTION PAYMENTS, TOGETHER WITH RELATED RELIEF, ALL IN ACCORDANCE WITH PURSUANT TO 11 U.S.C. §§361, 363 AND 364 AND RULE 4001 OF THE <u>FEDERAL RULES OF BANKRUPTCY PROCEDURE</u>

PLEASE TAKE NOTICE, that on July 8, 2011, at 11:00 a.m., before the Honorable Sean H. Lane, United States Bankruptcy Judge, at the United States Bankruptcy Court, Courtroom No. 701, One Bowling Green, New York, New York 10004-1408, a hearing will be held on the Debtor's motion (the "Motion") seeking the entry of an Order, pursuant to 11 U.S.C. §§361, 363, 364(c) and/or (d) and 507(b) and Rule 4001 of the Federal Rules of Bankruptcy Procedure, (i) authorizing the Debtor to enter into a proposed Debtor-in-Possession Financing and Adequate Protection Agreement (the "DIP Loan Agreement") with Griffon Cosmo, LLC ("Griffon Cosmo"), substantially on those terms set forth more fully in the DIP Loan Agreement, a copy of

which is being filed and served as Exhibit A to the Motion; (ii) authorizing the Debtor to grant liens on a secured and priority basis to Griffon Cosmo; (iii) authorizing adequate protection payments to Griffon Cosmo; and (iv) providing for related relief.

PLEASE TAKE FURTHER NOTICE, that if any written support of or opposition to the Motion is made, it should be filed with the Court and served upon Kornfeld & Associates, P.C., Attn: Randy M. Kornfeld, Esq., 570 Lexington Avenue, 17th Floor, New York, New York 10022, no later than seven (7) days prior to the hearing.

PLEASE TAKE FURTHER NOTICE, that the hearing may be adjourned from time to time without notice to any creditor or other party-in-interest other than by announcement of the adjourned date in open court on the date of the hearing or any adjourned date thereof.

Dated: New York, New York  **KORNFELD & ASSOCIATES, P.C.**
   June 22, 2011

               By: /s/ Randy Kornfeld
                 Randy M. Kornfeld, Esq.
                 *Attorneys for Debtor*
                 570 Lexington Avenue, 17th Floor
                 New York, New York 10022
                 Telephone: (212) 759-6767

#1588868

KORNFELD & ASSOCIATES, P.C.
*Attorneys for Debtor*
Randy M. Kornfeld, Esq.
570 Lexington Avenue, 17th Floor
New York, New York 10022
(212) 759-6767

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

In re:

    THIRD TORO FAMILY LIMITED
    PARTNERSHIP,

Case No. 11-11723-SHL
Chapter 11

                  Debtor.

**DEBTOR'S MOTION FOR AUTHORITY TO OBTAIN POST-PETITION SECURED FINANCING PURSUANT TO 11 U.S.C. §§364(c) AND/OR (d) AND 507(b) AND GRANTING LIENS ON A SECURED AND PRIORITY BASIS AND AUTHORIZING ADEQUATE PROTECTION PAYMENTS, TOGETHER WITH RELATED RELIEF, ALL IN ACCORDANCE WITH PURSUANT TO 11 U.S.C. §§361, 363 AND 364 AND RULE 4001 OF THE <u>FEDERAL RULES OF BANKRUPTCY PROCEDURE</u>**

The Debtor-in-Possession, Third Toro Family Limited Partnership (the "Debtor"), by and through its attorneys, Kornfeld & Associates, P.C., hereby moves this Court for the entry of an Order, pursuant to 11 U.S.C. §§361, 363, 364(c) and/or (d) and 507(b) and Rule 4001 of the Federal Rules of Bankruptcy Procedure, (i) authorizing the Debtor to enter into a proposed Debtor-in-Possession Financing and Adequate Protection Agreement (the "DIP Loan Agreement")[1] with Griffon Cosmo, LLC ("Griffon Cosmo" or "Lender"), substantially on those terms set forth more fully in the DIP Loan Agreement, a copy of which is being filed and served herewith as Exhibit A, which financing will permit the Debtor to refinance the Second Mortgage

---
[1] All defined terms in this Motion use the same definitions used in the DIP Loan Agreement.

against its business location; (ii) authorizing the Debtor to grant liens on a secured and priority basis to Griffon Cosmo; (iii) authorizing the Debtor's usage of cash collateral and authorizing adequate protection payments to Griffon Cosmo, with respect to Griffon Cosmo's Pre-Petition Loan Agreement and First Mortgage (as defined below and in the DIP Loan Agreement); and (iv) providing for related relief.  A copy of a proposed Order granting this Motion is being filed and served herewith as Exhibit B to this Motion.

### STATEMENT PURSUANT TO RULES 4001(c)(1)(B) AND 4001(d)(1)(B) AND LOCAL RULE 4001-2

In accordance with Bankruptcy Rules 4001(c)(1)(B) and 4001(d)(1)(B) and Local Rule 4001-2, the following is a concise statement that summarizes and sets out the location within the DIP Loan Agreement of all material provisions of the DIP Loan Agreement.[2]

| | |
|---|---|
| **Term Loan Facility:** | Term Loan facility in an amount, estimated to be approximately $1.2 million, which is sufficient to pay in full the pre-petition Second Mortgage against the Premises, plus applicable interest, closing costs and fees.  Sections 1.1 and 2.1(a).[3] |
| **Borrower**: | Debtor Third Toro Family Limited Partnership is the Borrower under the DIP Loan Agreement.  Page 1 and Section 1.1. |
| **Use of Proceeds**: | The proceeds of the DIP Loan will be used by the Debtor to satisfy the outstanding Second Mortgage Indebtedness of the Debtor to MKF Management, LLC, as holder of and secured by that certain Mortgage of the Debtor in favor of Benedict A. Silverman, dated as of June 9, 2008 (the "Second Mortgage"), plus applicable interest, closing costs and fees.  Section 6.3. |

---

[2] To the extent that there are any inconsistencies between the summary contained herein of the DIP Loan Agreement and the actual terms and conditions of the DIP Loan Agreement, the actual terms of the DIP Loan Agreement shall control.  Capitalized terms used but not defined in this section shall have the meanings given to them in the DIP Loan Agreement.

[3] All page, article and section references in the summary refer to provisions of the DIP Loan Agreement.

| | |
|---|---|
| **Interest**: | Interest on the DIP Loan shall be payable at a rate equal to 10% per annum prior to the Maturity Date. If the Debtor does not have sufficient Surplus Cash Flow to make such payment, the balance of the DIP Loan shall be increased by the amount of accrued and unpaid interest. If an Event of Default or a Bankruptcy Termination Event shall cause the maturity of the Debtor's Obligations under the Lending Documents, the DIP Loan will bear interest at 16% per annum. Sections 1.1 and 4.1(b) and (d). |
| **Maturity Date:** | "Maturity Date" means the earlier of (i) one year from the date of approval of DIP Loan or (ii) upon the occurrence of a Bankruptcy Termination Event or an Event of Default. Section 1.1. |
| **Termination Date**: | "Termination Date" means the earlier of (a) the Maturity Date, (b) the date Lender demands payment of the Obligations following a Bankruptcy Termination Event or an Event of Default. Sections 1.1 and 8.1. |
| **Priority of Secured Claim**: | The DIP Loan will be secured by the same collateral and will have the same relative payment priority as the Debtor's current Second Mortgage. It therefore is proposed to be granted a secured lien position, pursuant to 11 U.S.C. § 364(c), which is junior as to secured claims against the Debtor which are superior to the Debtor's current Second Mortgage and a secured claim with lien priority, pursuant to 11 U.S.C. § 364(d), as to secured claims against the Debtor which are junior to the Debtor's current Second Mortgage. This secured claim also will have priority, pursuant to § 364(c)(1) of the Bankruptcy Code, over any or all administrative expenses or priority claims specified in §§ 503 and 507 of the Bankruptcy Code. Section 3.2. |
| **Collateral**: | The Post-Petition Collateral shall mean all of that same collateral as was, as of the Filing, the collateral for the Second Mortgage, including the Premises and all fixtures, chattels and articles of personal property now or hereafter attached to or used in connection with the Premises, as defined in the Second Mortgage, including any and all replacements thereof and additions thereto or any proceeds thereof. Section 1.1. |
| **Conditions Precedent:** | The DIP Loan Agreement contains ordinary and reasonable conditions precedent to borrowings, including receipt of executed documents, lack of certain litigation; accuracy of |

3

|                | representations and warranties; no defaults or Events of Default shall be continuing; entry by the Bankruptcy Court of the Final Order; and other ordinary and reasonable conditions precedent. *See, inter alia,* Article VI. |
|---|---|
| **Events of Default**: | The DIP Loan Agreement contains ordinary and reasonable Events of Default including the following: any payment default; defaults in the performance or breach of any covenant in the Loan Documents; inaccuracy in any material respect of any representation or warranty of the Debtor, certain Events of Default under DIP Loan Agreement, including failure to obtain a Final Order approving same on or before July 29, 2011, dismissal or conversion of the Bankruptcy Case to chapter 7; the filing of an application by the Debtor for the approval of any superpriority claim which is *pari passu* with or senior to the claims of Lender, or the granting of any such *pari passu* or senior superpriority claim; payment of certain Indebtedness without the consent of Lender; proposal or confirmation of a Plan of Reorganization that does not provide for payment in full in cash of the Obligations to Lender; any Loan Document shall cease to be effective or shall be contested by the Debtor; the filing of a pleading or proceeding by the Debtor which could reasonably be expected to result in a material impairment of the rights or interests of Lender under any Loan Document; and certain other ordinary and typical Events of Default. *See, inter alia*, Sections 1.1 and 8.1. |
| **Remedies:** | The DIP Loan Agreement contains ordinary and reasonable remedies upon a Default or Bankruptcy Termination Event, including declaring the Obligations to be immediately due and payable; seeking Bankruptcy Court authorization to exercise and enforce any and all rights and remedies available upon default to a secured party under the UCC or other applicable law; and to exercise any other rights and remedies available to it by law or agreement. Sections 8.2 and 8.3. |
| **Additional Provisions Disclosed Pursuant to Local Rule 4001-2(a):** | The DIP Loan Agreement does not contain any fees, including letter of credit fees, commitment fees, or the like, but does require that the Debtor pay certain out-of-pocket expenses of Lender incurred in connection with the financing; the DIP Loan Agreement does not contain any |

provision that would limit the Court's power or discretion in a material way, or would interfere with the exercise of the fiduciary duties, or restrict the rights and powers of the Debtor in connection with the operation, financing, use or sale of the business or property of the estate.

In support of its Motion, the Debtor states as follows:

**BACKGROUND**

1. On April 13, 2011 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code").

2. The Debtor is a debtor in possession of its assets which continues to operate its business and to manage its affairs pursuant to 11 U.S.C. §§1107(a) and 1108.

3. No official committee of unsecured creditors has been established in this Chapter 11 case.

4. The Debtor is a single asset real estate debtor, within the meaning of 11 U.S.C. §101(51B), and is the owner and operator of real property located at 631/639 West 46th Street, New York, New York 10036 (the "Premises").

5. Prior to the Filing Date, the Debtor had obtained a term loan from First American International Bank ("FAIB") secured by the Premises on the terms set forth in a certain Mortgage (the "First Mortgage") and Mortgage Note dated as of March 28, 2006, including any and all amendments thereto, an Assignment of Rents dated as of March 28, 2006 and all other schedules and documents prepared and/or executed in connection therewith (collectively, the "Pre-Petition Loan Agreement"). The First Mortgage and the Pre-Petition Loan Agreement were assigned to Griffon Cosmo pursuant to a Mortgage Loan Purchase Agreement dated May 28, 2010 (the "Assignment Agreement").

6. As of the commencement of this case, the outstanding principal balance due to Griffon Cosmo on the First Mortgage was approximately $3.9 million, plus applicable interest, fees and expenses in accordance with the Pre-Petition Loan Agreement, bringing the total due to approximately $5.35 million, as of the Petition Date and approximately $5.55 million, as of June 15, 2011, plus applicable interest, fees and expenses thereafter. Pursuant to the terms of the Pre-Petition Loan Agreement, interest accrues at a rate of 24 percent per annum on that obligation, but will be reduced to 15% under the DIP Loan Agreement.

7. The Debtor agrees and acknowledges, exclusively on its own behalf, and without prejudice to the rights of any party in interest including, but not limited to, any Chapter 11 Trustee, Chapter 7 Trustee or Creditors' Committee, that as of the Filing Date and the date hereof: (i) the Pre-Petition Indebtedness is due and owing to Griffon Cosmo, (ii) the Pre-Petition Indebtedness is secured by valid, perfected first priority liens acquired by or granted to Griffon Cosmo (the "Pre-Petition Liens") under the First Mortgage, pursuant to the Pre-Petition Loan Agreement; and (iii) Griffon Cosmo is entitled, pursuant to Bankruptcy Code §§ 361 and 363 to adequate protection of its interests in the Pre-Petition Collateral, including the rents and other proceeds from the operation of the Premises, within the ambit of Bankruptcy Code § 552(b) and the definition of "Cash Collateral" contained in Bankruptcy Code § 363(a).

8. Prior to the Filing Date, the Debtor had also obtained a second term loan secured by a mortgage (the "Second Mortgage"), pursuant to a Secured Promissory Note dated June 9, 2008 given by the Debtor to Benedict A. Silverman in the original principal amount of $1 million. Interest is currently accruing on that Secured Promissory Note at the rate of 16 percent per annum. The Debtor's Schedules reflect that that Note is currently held by MKF

Management, LLC and that there was approximately $1,200,000.00 due on the Second Mortgage as of the Filing Date.

### THE DEBTOR SHOULD BE AUTHORIZED TO OBTAIN
### POST-PETITION FINANCING THROUGH THE DIP LOAN AGREEMENT

9. By this Motion, the Debtor requests entry of an order, substantially in the form of that filed being filed and served as Exhibit B, authorizing the Debtor to obtain DIP financing in a principal amount sufficient to payoff the Second Mortgage in full, an amount estimated to be approximately $1.2 million (the "DIP Loan"). Interest will be charge on the DIP Loan a rate of 10 percent per annum, on terms in accordance with those set forth in the proposed DIP Loan Agreement, so as to permit the Debtor to refinance and to pre-pay in full those obligations of the Debtor pursuant to the Second Mortgage, as defined above and which is held by MKF Management, LLC.

10. Section 364 of the Bankruptcy Code authorizes a debtor to obtain, in certain circumstances, post-petition financing on a secured or superpriority basis. Section 364(c) of the Bankruptcy Code provides, in pertinent part, that the court, after notice and a hearing, may authorize a debtor that is unable to obtain credit allowable as an administrative expense under §503(b)(1) of the Bankruptcy Code to obtain credit or to incur debt:

> (1) with priority over any or all administrative expenses of the kind specified in section 503(b) or 507(b) of [the Bankruptcy Code];
>
> (2) secured by a lien on property of the estate that is not otherwise subject to a lien; or
>
> (3) secured by a junior lien on property of the estate that is not subject to a lien.

11 U.S.C. §364(c).

11. To satisfy the requirements of §364(c) of the Bankruptcy Code, a debtor need only demonstrate "by a good faith effort that credit was not available" to the debtor on an unsecured or administrative expense basis. Bray v. Shenandoah Federal Savings and Loan Association (In re: Snowshoe Co.), 789 F.2d 1085, 1088 (4th Cir. 1986). "The statute imposes no duty to seek credit from every possible lender before concluding that such credit is unavailable." *Id*. When few lenders are likely to be able and willing to extend the necessary credit to a debtor, "it would be unrealistic and unnecessary to require [the debtor] to conduct such an exhaustive search for financing." In re: Sky Valley, Inc., 100 B.R. 107, 113 (Bkrtcy. N.D. Ga. 1998), *aff'd sub nom.*, Anchor Savings Bank FSB v. Sky Valley, Inc., 99 B.R. 117, 120 n.4 (N.D. Ga. 1989).

12. Courts grant a debtor considerable deference in acting in accordance with its "reasonable business judgment in obtaining such credit." *See*, In re: YL W. 87th Holdings I LLC, 423 B.R. 421, 441 (Bkrtcy. S.D.N.Y. 2010) ("Courts have generally deferred to a debtor's business judgment in granting section 364 financing."); In re: Ames Department Stores, Inc., 115 B.R. 34, 40 (Bkrtcy. S.D.N.Y. 1990) ("cases consistently reflect that the court's discretion under section 364 [of the Bankruptcy Code] is to be utilized on grounds that permit [a debtor's] reasonable business judgment to be exercised so long as the financing agreement does not contain terms that leverage the bankruptcy process and powers or its purpose is not so much to benefit the estate as it is to benefit a party-in-interest").

13. In addition, §105(a) of the Bankruptcy Code grants authority to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. §105(a). This provision is "the basis for a broad exercise of power [by the Court] in the administration of a bankruptcy case." In re: Flores, 291 B.R. 44, 54

(Bkrtcy. S.D.N.Y. 2003), *superseded by statute on other grounds*, Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. No. 109-8, §303(b), 119 Stat. 23, *as recognized in* In re: Elmendorf, 345 B.R. 486 (Bkrtcy. S.D.N.Y. 2006) (*quoting* 2 Collier on Bankruptcy, ¶105.01 at 105-5-6 (Lawrence P. King, *et al. eds.*, 15th Ed. Rev. 2006)).

14. Through the DIP Loan Agreement, the Debtor proposes to grant to Griffon Cosmo a second priority lien security mortgage against the Premises, pursuant to 11 U.S.C. §364(c)(1) and (d), which lien is defined in Section 1.1 of the DIP Loan Agreement as being secured by the same collateral as currently secures the existing Second Mortgage (the "Post-Petition Collateral"), on terms which are more favorable than those of the existing Second Mortgage and which will be more beneficial to the interests of the Debtor's Chapter 11 estate.

15. The Debtor submits that it is unable to obtain post-petition financing on terms more favorable than those provided in the DIP Loan Agreement.

16. In its Schedules, the Debtor has estimated the value of the Premises to be approximately $7,500,000.00.

17. The Premises is currently subject to real property tax liens of approximately $124,000.00, the first and second mortgages identified above and IRS Notices of Tax Liens in the face amount of approximately $3,400,000.00. Although the Debtor's Schedules reflect that the $3.4 Million of Notices of Federal Tax Lien which have been filed against the Premises are disputed, the total of all lien claims of record against the Premises exceeds the estimated value of the Premises. Under such circumstances, the Debtor is aware of no lender which would be willing to provide such financing on a general unsecured or junior lien basis, since any such junior lien loan would, in fact, constitute a wholly unsecured loan.

18. Griffon Cosmo is willing to make the DIP Loan to the Debtor, provided that the Debtor is authorized to grant the liens provided under the DIP Loan Agreement, which liens are to be of a priority equivalent to those held by the holder of the current Second Mortgage.

19. The Debtor and Griffon Cosmo both acknowledge that as of the commencement of this case, Griffon Cosmo was a New York limited liability company whose ownership was wholly unrelated to that of the Debtor. On or about June 7, 2011, while this Bankruptcy Case was pending, Third Toro Real Estate Corp., the general partner and 5% owner of the Debtor, entered into a Voting Trust Agreement with an affiliate of Griffon Cosmo, such that that Griffon Cosmo affiliate now controls three of five seats on the board of directors of the general partner of the Debtor.

20. Notwithstanding that it has become an "affiliate" or "insider" of the General Partner of the Debtor while this case has been pending, Griffon Cosmo has advised the Debtor that it would not make the proposed DIP Loan, unless it is granted liens which are equivalent to those which currently exist in favor the current holder of the Second Mortgage.

21. Because those liens proposed to be granted to Griffon Cosmo are identical to those which are currently held by the holder of the Second Mortgage, the grant of such liens does not prejudice the rights of the Debtor's other secured creditors and those liens should require no additional adequate protection on account of the grant of such liens, pursuant to the DIP Loan Agreement, because the secured position of those other secured creditors would not be modified by the approval of the DIP Loan Agreement.

22. The Debtor has limited revenues at this time, other than rents which are paid by tenants. Such rents are regularly insufficient to permit the Debtor to meet its monthly operating expenses, including debt service.

23. In accordance with the DIP Loan Agreement, refinancing the Debtor's existing Second Mortgage, which is currently accruing interest at 16 percent per annum, with the new DIP Loan at 10 percent per annum is estimated to likely save the Debtor approximately $60,000 on the Second Mortgage and $351,000 on the First Mortgage during its one year term.

24. The Debtor's existing secured obligations exceed the value of the Premises, such that obtaining credit on an unsecured or administrative expense basis is not feasible. The Debtor submits that the DIP Loan Agreement provides the best terms reasonably available to the Debtor on which to obtain the post-petition financing necessary to refinance its Second Mortgage. Moreover, the Debtor believes that no lender other than Griffon Cosmo will agree to provide financing on terms that are comparable to or more favorable than those offered by Griffon Cosmo.

## GRIFFON COSMO SHOULD BE DEEMED A "GOOD FAITH" LENDER UNDER BANKRUTPCY CODE SECTION 364(e)

25. Section 364(e) of the Bankruptcy Code protects a good faith lender's right to collection on loans extended to a debtor, and its right in any lien securing those loans, even if the authority of the debtor to obtain such loans or grant such liens is later reversed or modified on appeal. Specifically, §364(e) provides that:

> The reversal or modification on appeal of an authorization under this section [364 of the Bankruptcy Code] to obtain credit or incur debt, or of a grant under this section of a priority or a lien, does not affect the validity of any debt so incurred, or any priority or lien so granted, to an entity that extended such credit in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and the incurring of such debtor, or the granting of such priority or lien, were stayed pending appeal.

11 U.S.C. §364(e).

26. The DIP Loan Agreement would provide refinancing to the Debtor of the obligations currently secured by the Second Mortgage on terms more favorable than those of the Second Mortgage, such that it will save the Debtor money. The Debtor submits that DIP Loan Agreement has been negotiated in good faith between the Debtor and the Lender requests that all credit to be extended to the Debtor pursuant to the DIP Loan Agreement should be determined to be in "good faith", within the meaning of Bankruptcy Code §364(e), and that the Lender is entitled to the protections of Bankruptcy Code §364(e).

27. The terms of the DIP Loan Agreement are fair and reasonable and in proposing to enter into the DIP Loan Agreement the Debtor submits that it has exercised prudent business judgment consistent with its fiduciary duties to the estate. The liens proposed to be granted to Lender under the DIP Loan Agreement are supported by reasonably equivalent value and fair consideration.

28. The DIP Loan Agreement is the result of the Debtor's reasonable and informed determination that Griffon Cosmo offered the Debtor the most favorable terms available on which to obtain post-petition financing. Upon information and belief, both the Debtor and Griffon Cosmo have acted in good faith at all times. The terms and conditions of the DIP Loan Agreement will save the Debtor money. Accordingly, the Court should find that Griffon Cosmo is a "good faith" lender, within the meaning of §364(e) of the Bankruptcy Code and is entitled to all of the protections afforded by that Section.

**THIS COURT SHOULD APPROVE THE STIPULATION BETWEEN THE DEBTOR AND GRIFFON COSMO CONTAINED IN THE DIP LOAN AGREEMENT WHICH WOULD AUTHORIZE THE DEBTOR'S USE OF CASH COLLATERAL AND AUTHORIZ ADEQUATE PROTECTION OF GRIFFON COSMO'S SECURED CLAIMS, PURSUANT TO THE <u>PRE-PETITION LOAN AGREEMENT AND THE FIRST MORTGAGE</u>**

29. Additionally, this Motion seeks approval by this Court of those provisions of the DIP Loan Agreement intended to memorialize the terms of an arrangement seeking to authorize the Debtor's use of Cash Collateral and authorizing the Debtor to provide adequate protection to the interests of Griffon Cosmo, as the holder of the Pre-Petition Loan Agreement and the First Mortgage, pursuant to 11 U.S.C. §§ 361(a) and 363.

30. It is well-established that an oversecured creditor, such as Griffon Cosmo is with respect to the Pre-Petition Loan Agreement and the First Mortgage, is entitled to adequate protection of its oversecured claim. <u>United Savings Association of Texas</u> v. <u>Timbers of Innwood Forest Associates, Ltd</u>., 484 U.S. 365, 374 (1988).

What steps are required to provide an oversecured creditor with adequate protection is not specified by statute. Instead, this is a determination to be made based upon the particular facts present in a particular case. *See, e.g.,* <u>In re: Island Helicopter Corp</u>., 63 B.R. 515, 521 (Bkrptcy. E.D.N.Y. 1986) ("adequate protection" is a "flexible" concept).

31. Pursuant to the DIP Loan Agreement, the Debtor would be permitted to expend cash collateral consistent with an Approved Cash Flow Budget Agreement, as defined in the DIP Loan Agreement. The Debtor and Griffon Cosmo each agree that the rents of the Premises are to be considered to be cash collateral in this case and each is willing to permit their usage by the Debtor, so long as the Debtor provides to Griffon Cosmo adequate protection on those terms set forth in the DIP Loan Agreement.

32. Also pursuant to the DIP Loan Agreement, without modification of the contractual obligations of the Debtor to Griffon Cosmo pursuant to the Pre-Petition Loan Agreement, the Debtor and Lender would agree that, for so long as the Debtor performs its obligations pursuant to the DIP Loan Agreement, Griffon Cosmo's rights as a secured creditor under its First Mortgage will be deemed "adequately protected", within the meaning of 11 U.S.C. Section 361(a), provided that the Debtor: (1) makes monthly payments of interest only on the Pre-Petition Indebtedness, consistent with the provisions of the Approved Cash Flow Budget Agreement, commencing on the first (1st) day of the first calendar month after the date of the approval of the DIP Loan Agreement, to the extent that the Debtor has funds available after payment of the necessary operating expenses identified in the Approved Cash Flow Budget ("Surplus Cash Flow"); (2) pays for and maintains in place in favor of Lender insurance coverage consistent with that required pursuant to Section 6.1(c) of the DIP Loan Agreement; and (3) adequately repairs and maintains the Premises and all fixtures and appurtenances thereto in at least as good condition as existed as of the Filing Date.

33. The DIP Loan Agreement also provides that if the Debtor does not have sufficient Surplus Cash Flow to make monthly payments as required by the Pre-Petition Loan Agreement, in accordance with 11 U.S.C. § 506(b), the amount of the balance due on the Pre-Petition Indebtedness shall be increased on a monthly basis by the amount of accrued and unpaid interest and fees (but shall be reduced if said interest and fees are thereafter paid from later Surplus Cash Flow).

34. The DIP Loan Agreement also proposes that to the extent the Lender's liens pursuant to the Pre-Petition Loan Agreement and First Mortgage ultimately prove to be

inadequate to fully secure the Pre-Petition Indebtedness, any unsecured balances due to Lender would be entitled to priority over all other priority claims, in accordance with 11 U.S.C. §507(b).

35. The Debtor submits that approval of the authorization for the Debtor to use cash collateral and for the Debtor to provide adequate protection to Griffon Cosmo's secured claims pursuant to First Mortgage and the Pre-Petition Loan Agreement on those terms set forth in the DIP Loan Agreement is in the best interests of the Debtor and its Chapter 11 estate. Such terms are fair and reasonable and the Debtor submits that its proposal to agree to such terms is a sound exercise of the Debtor's business judgment.

## **NO PRIOR APPLICATION**

36. No previous application for the relief requested herein has been made to this or any other Court.

## **CONCLUSION**

WHEREFORE, the Debtor respectfully requests that this Court enter an Order, pursuant to 11 U.S.C. §§361, 362, 364 and Rule 4001 of the Federal Rules of Bankruptcy Procedure, authorizing the Debtor to obtain DIP financing from Griffon Cosmo through the DIP Loan DIP Loan Agreement and granting to the Debtor such other and further relief as this Court may deem just and proper.

Dated: New York, New York  **KORNFELD & ASSOCIATES, P.C.**
       June 22, 2011

                                    By:   /s/ Randy Kornfeld
                                          Randy M. Kornfeld, Esq.
                                          *Attorneys for Debtor*
                                          570 Lexington Avenue, 17th Floor
                                          New York, New York 10022
                                          Telephone: (212) 759-6767

#1588868