KORNFELD & ASSOCIATES, P.C.       **Adjourned**
*Attorneys for the Debtor and*      **Hearing Date: July 25, 2011 at 11:30 am**
*Debtor-In-Possession*
570 Lexington Avenue, 17th Floor
New York, New York 10022
(212) 759-6767
Randy M. Kornfeld (RMK 9908)

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------X
IN RE:      Case No. 11-11723 (SHL)

THIRD TORO FAMILY LIMITED      Chapter 11
PARTNERSHIP,

           Debtor.
--------------------------------------------------------------X

**SUPPLEMENTAL RESPONSE OF THIRD TORO FAMILY LIMITED
PARTNERSHIP TO THE UNITED STATES TRUSTEE'S MOTION FOR AN
ORDER TO CONVERT THIS CHAPTER 11 CASE TO A CHAPTER 7 CASE OR,
ALTERNATIVELY, TO DISMISS, THE JOINDER OF MKF MANAGEMENT
LLC, AND IN FURTHER SUPPORT OF THE DEBTOR'S MOTION TO
APPROVE PROPOSED POST-PETITION DEBTOR-IN-POSSESSION
FINANCING**

TO THE HONORABLE SEAN H. LANE
UNITED STATES BANKRUPTCY JUDGE:

      Third Toro Family Limited Partnership ("Third Toro" or "Debtor"), as and for its

supplemental response to the motion ("Motion") of the United States Trustee("UST") seeking to

dismiss or convert the case of Third Toro Limited Partnership, as well as the "Joinder"

("Joinder") therein interposed by MKF Management LLC ("MKF"), respectfully represents as

follows:

## INTRODUCTION

      1.      The Debtor submits this supplemental response and objection requesting that the

Motion and Joinder be denied because the Debtor believes it would be in the best interests of the

creditors of the Debtor that this case remain in Chapter 11, that Kornfeld & Associates, P.C.

("K&A") represent the Debtor, and that the proposed debtor-in-possession financing be approved.

2.     In seeking the denial of the Motion and the Joinder, the Debtor has already submitted a response to the Motion of the UST (Docket No, 19) and on June 1, 2011 the Court heard initial oral argument.  Following oral argument and discussions on the record, it was agreed that the UST's motion be adjourned to, *inter alia*, enable the UST to conduct a Section 341 meeting of this Debtor and of the related debtors who had not yet appeared at Section 341 meetings.  Accordingly, the UST's motion was adjourned *sine die*, and the Section 341 meetings took place on June 6, 2011.  Subsequent thereto, the UST re-calendared the Motion for June 22, 2011.

3.     On June 21, 2011, one day prior to the adjourned date of the UST's Motion, MKF submitted its Joinder to which the Debtor now responds.  Prior to the filing of its Joinder, MKF never objected to K&A's representation of the Debtor.  The Debtor submits that it is only now being raised by MKF as a litigation tactic that will be more fully discussed hereinafter in this objection.

4.     Despite MKF's contentions otherwise, K&A is a "disinterested person" pursuant to 11 U.S.C. § 101(14), represents no interest adverse to the Debtor or to the Debtor's estate and should be approved as counsel to the Debtor.

5.     By way of background, the Debtor filed its petition for relief pursuant to Chapter 11 of the Bankruptcy Code on April 13, 2011.  Thereafter, on or about May 10, 2010, the Debtor prepared and forwarded its application to retain K&A as counsel to Greg Zipes, Esq. via e-mail for review and subsequently filed said application with the Court on May 13, 2011.  The

Debtor's application to retain K&A is still pending. Other than the Joinder filed by MKF, there are no objections to the Debtor's retention of K&A as counsel.

<u>ARGUMENT</u>

**POINT I: MKF'S CONFLICT OF INTEREST ARGUMENTS REGARDING THE EMPLOYMENT OF K&A LACK MERIT**

**A.** **<u>THERE IS NO CONFLICT OF INTEREST AND THE PROPOSED OBJECTION TO THE RETENTION OF K&A CANNOT CONSTITUTE CAUSE TO CONVERT THIS CASE TO A CHAPTER 7 CASE</u>**

6. Initially, the Debtor's proposed retention of K&A as its counsel is not a ground to convert this case. Since the filing of this case, the Debtor has been continuously represented in this case by counsel and an application to employ K&A has been pending before this Court since May 13, 2011. Even if this Court were for some reason to find the retention of K&A to be inappropriate, the ordinary and customary practice in Federal Bankruptcy Court would be to permit the Debtor a reasonable opportunity to retain other counsel, not to convert or dismiss a bankruptcy case. For MKF to suggest otherwise clearly demonstrates that its objections to K&A's retention are being inserted into this proceeding for tactical litigation purposes, rather than seeking to pursue what is in the best interests of the Debtor's bankruptcy estate and its creditors.

7. Pursuant to Section 327(a), counsel hired to represent a debtor's estate must satisfy two requirements: (1) the attorney must not hold or represent an interest adverse to the estate; and (2) the attorney must be a disinterested person. <u>Bergrin v. Eerie World Entm't, LLC</u>, 2003 U.S. Dist. LEXIS 18259 (S.D.N.Y. Oct. 9, 2003). Disqualification of counsel cannot be premised on the appearance of conflict alone. <u>In re Muma Servs., Inc.</u>, 286 B.R. 583, 590 (Bankr. D. Del. 2002). Nor is a hypothetical or theoretical conflict of interest sufficient to disqualify an attorney. <u>TWI Int'l v. Vanguard Oil & Serv. Co.</u>, 162 B.R. 672, 675 (S.D.N.Y.

1994) ("Merely hypothizing that conflicts may arise is not a sufficient basis to warrant the disqualification" of an attorney").  As will be demonstrated below, MKF's position is clearly one that has been interposed for tactical reasons and has no basis in law or fact.

8.      The Second Circuit recognizes that a party is entitled to counsel of its own choosing and that disqualification is a severe remedy only appropriate for possible professional misconduct.  Glueck v. Jonathan Logan, Inc., 653 F.2d 746, 748 (2d Cir. 1981) ("[r]ecognizing the serious impact of attorney disqualification on the client's right to select counsel. . . ."); W. T. Grant Co. v. Haines, 531 F.2d 671, 677 (2d Cir. 1976) ("the violation of professional ethics does not . . . automatically result in disqualification of counsel").

9.      "It is well established in this Circuit that motions to disqualify attorneys are generally disfavored and are subject to fairly strict scrutiny to ensure that they are not being interposed merely for tactical reasons." In re Best Prods. Co., 168 B.R. 35, 63 (Bankr. S.D.N.Y. 1994).  The Court has discretion to approve the Debtor's chosen counsel, taking into account the particular facts and circumstances of each case.  In re AroChem Corp., 176 F.3d 610, 621 (2d Cir. 1999).

10.     On a motion to disturb a client's choice of counsel, the Court is required to carefully exercise its discretion and to weigh all of the competing factors involved, including the expense and delay.  In re Iorizzo, 35 B.R. 465, 468 (Bankr. E.D.N.Y. 1983); In re Glenn Electric Sales Corp., 99 B.R. 596, 602 (D.N.J. 1988).

11.     K&A is neither an interested party nor does it represent any interest adverse to The Debtor's estate, and it is therefore not disqualified from representing the Debtor.

12.     The Second Circuit defines an "adverse interest" as follows: (1) to possess or assert any economic interest that would tend to lessen the value of the bankruptcy estate or that

would create either an actual or potential dispute in which the estate is a rival claimant; or (2) to possess a predisposition under circumstances that render such a bias against the estate. In re AroChem Corp., 176 F.3d at 623.

13.     There is simply no conflict of interest created by K&A's former representation of Third Toro Real Estate Corporation ("the GP"), and MKF's argument that K&A represents an interest adverse to the Debtor's based on its past representation of the GP is entirely without merit.  Specifically, Section 327 requires disqualification only when the Debtor's counsel has a present conflict of interest, not a past conflict.  In re AroChem Corp., 176 F.3d at 623. (Counsel will be disqualified under section 327(a) "only if it presently 'holds or represents an interest adverse to the estate,' notwithstanding any interests it may have held or represented in the past").

14.     Here, K&A briefly represented the GP for the very narrow purpose of defending it, along with the Debtor, in the foreclosure action commenced by Griffon (the "Foreclosure Action").  Griffon has now entered into an agreement with the Debtor to supply debtor-in-possession financing, subject to Court approval, with the ultimate goal being the proposal of a plan of reorganization paying 100% to creditors.  Moreover, even during the Foreclosure Action, no conflict of interest existed as the Debtor and the GP's interests were united and aligned.

15.     The Foreclosure Action has since been discontinued by Griffon, and K&A no longer represents the GP.  Accordingly, K&A's former representation of the GP cannot be used as a ***present*** conflict of interest.  Further, even if K&A continued to represent the GP in some ancillary action, such representation would not mandate disqualification by virtue of the relationship between the Debtor and the GP.  In re Hurst Lincoln Mercury, 80 B.R. 894, 895 (Bankr. S.D. Ohio 1987) ("It is fundamental that simultaneous representation of a corporation

and its sole stockholder is not in and of itself improper").  As counsel must represent a present

adverse interest, which is not the case here, K&A's representation of the Debtor is proper.

16.     Likewise, K&A's former representation of Sixth Toro in the same Griffon

Foreclosure Action creates no issue to disqualify K&A from representing the Debtor.  An active

conflict of interest is defined as "an active competition between two interests, in which one

interest can only be served at the expense of the other."  In re Penney, 334 B.R. 517, 520 (Bankr.

D. Mass. 2005).

17.     MKF's hypothetical conflict between the Debtor and Sixth Toro is based on its

allegation that K&A cannot sue Sixth Toro for rent since it serves as counsel for both parties.

However, as this court is aware, a rent receiver was appointed as a result of the Foreclosure

Action; it was agreed at the time of the Initial Case Conference before this Court that the rent

receiver was to remain in place and the rent receiver has already initiated non-payment

proceedings against Sixth Toro.  K&A has not, and does not, represent either the rent receiver or

Sixth Toro in these proceedings, and has no involvement with them whatsoever.  Accordingly,

there is no actual active conflict of interest, and MKF's motion to disqualify K&A as the

Debtor's counsel must be denied.  See Williams v. Marlar (In re Marlar), 248 B.R. 577, 580

(Bankr. W.D. Ark. 2000) ("court must disapprove the employment only if there is an actual

conflict of interest") and In re Stylianou, 2010 WL 3719303, *4 (Bankr. S.D.N.Y.) ("Any

disqualifying conflict of interest must be either 'actual or reasonably probable' and not 'merely

theoretical, and its occurrence . . . merely speculative.'")

18.     Thus, K&A represents no interest adverse to the Debtor or the Debtor's estate and

is qualified to represent the Debtor under Section 327.  K&A's proposed representation of the

Debtor, therefore, is also not a ground to convert this case under Section 1112.

## B.    <u>K&A IS A DISINTERESTED PERSON</u>

19.     The second prong of Section 327 requires that the estate's counsel be a "disinterested person", which is defined by the Section 101(14) Bankruptcy Code as one who is not a creditor, equity shareholder, or insider, and who "does not have an interest materially adverse to the interest of the estate or any class of creditors . . . by reason of any indirect or direct relationship to, connection with, or interest in, the debtor. . . ."). <u>Bergrin v. Eerie World Entm't, LLC</u>, 2003 U.S. Dist. LEXIS 18259 (S.D.N.Y. Oct. 9, 2003). The determination of counsel's disinterestedness is a fact-specific inquiry. *Id*.; <u>In re Adelphia Comm. Corp.</u>, 342 B.R. 122, 127 (S.D.N.Y. 2006).

20.     Here, K&A is unquestionably a disinterested person. K&A's relationship to the Debtor, which arose briefly prior to the commencement of this case, was only ever as its counsel. Specifically, prior to this case, K&A's only relationship with the Debtor was its counsel in the Griffon Foreclosure Action, which representation lasted approximately two short months.

21.     MKF, however, makes the conclusory statement that K&A is not disinterested. MKF provides absolutely no support or explanation, nor could it, as K&A has no interest adverse to the Debtor. Moreover, any claim that K&A is a creditor, equity shareholder, or insider should be disregarded outright as completely without merit. Finally, K&A has no interest adverse to any creditor in this case, and is a disinterested person under 11 U.S.C. § 101(14) or § 327.

## C.    <u>THE ALLEGATIONS IN MKF'S JOINDER PERTAINING TO K&A ARE MERELY A TACTIC TO ATTEMPT TO FRUSTRATE THE DEBTOR'S PROPOSED FINANCING AND PROPOSED PLAN FUNDING ARRANGEMENTS WITH GRIFFON</u>

22.     MKF's motion to disqualify K&A as the Debtor's counsel is nothing more than a forced strategy to attempt to convert this case to a Chapter 7 case thereby frustrating the Debtor's proposed deal with Griffon in a virtual scorched-earth manner. *Cf*. <u>In re Best Prods. Co.</u>, 168

B.R. at 63 (motions to disqualify counsel are generally disfavored in this Circuit and subject to strict scrutiny; delay in presentation of such claims is evidence that they are being raised for tactical advantage). Specifically, MKF has known from the case's inception that the Debtor would be retaining K&A as its attorneys, and never raised any objection until now, only after learning of the Debtor's plan to reorganize with the assistance of Griffon, its rival and the first mortgagee.

23.     MKF's argument that K&A is disqualified from representing the Debtor is disingenuous. Specifically, prior to the Joinder, MKF never objected to K&A's representation of the Debtor. Indeed, counsel for MKF was present at the May 16, 2011 initial case conference where the issue of a potential conflict of K&A's representation was discussed, yet MKF's counsel said nothing. Moreover, at the Third Toro's Initial Case conference on May 16, 2011, the UST, Greg Zipes, Esq., stated on the record that he had no opposition to Third Toro's application to employ K&A. Nor did MKF object to K&A's representing the Debtor at the hearing on June 1, 2011 on the UST's motions to convert or dismiss this and the related cases, despite speaking to the merits of the motions. K&A was just as theoretically potentially conflicted on May 16 and June 1 as it would be now, yet MKF said nothing. Instead of objecting at any of the numerous other opportunities to do so, MKF chose to allow this case to proceed, only to file an eleventh hour objection to the Debtor's retention of K&A one day before the UST's motion to convert or dismiss was to be heard.

24.     Despite its claims otherwise, it is clear that MKF's motives lie elsewhere than in the best interests of creditors. The Debtor has now filed a motion proposing to refinance and to pay off MKF in full. MKF has no economic interest in this case, other than as a secured creditor proposed to be paid in full in the immediate future. There can be no reason why MKF would

want to oppose the Debtor's choice of counsel or to force the Debtor into Chapter 7 under such circumstances, other than because MKF is itself a disgruntled would-be acquirer of the Debtor's assets which is trying to accomplish that end without the Debtor's cooperation.

25.     For that reason, the Debtor submits that MKF's Joinder is one which was brought in bad faith, because it is "not attempting to protect their own proper interests, but …, instead, attempting to obtain some benefit to which they were not entitled",., improper "ulterior motives" comparable to the circumstances present in the Second Circuit's recent decision in <u>In re: DBSD North America, Inc.</u>, 634 F.3d 79, 102 (2d Cir. 2011).  Accordingly, its Joinder should be viewed with great skepticism and should be overruled.

**POINT II:     THE DEBTOR'S PROPOSED DIP FINANCING ARRANGEMENT WITH GRIFFON SHOULD BE APPROVED**

**A.     <u>THE DEBTOR EXTENSIVELY MARKETED THE 46TH STREET PROPERTY BEFORE REACHING THE PROPOSED DEBTOR-IN-POSSESSION FINANCING AGREEMENT WITH GRIFFON</u>**

26.     Prior to reaching the proposed debtor-in-possession financing agreement with Griffon, the Debtor extensively marketed the property at 639 W. 46th Street, New York, New York and made numerous efforts to finance, rent, or sell the property.  Indeed, in the past year the Debtor received numerous inquiries about the property from interested parties.

27.     As part of its marketing process, the Debtor executed non-disclosure agreements with many of the parties interested in the property, and, accordingly, cannot reveal their identity or details about the inquiries.  The Debtor is, however, willing to provide details to the Court for review *in camera* if the Court deems it necessary.

28.     Generally the inquiries fell into three categories: 1) Financing; 2) Rental; and 3) Sales.

29.     With respect to financing, since the time that the property went into foreclosure, the only offers which the Debtor received were "hard money financing", as no conventional lender would refinance the property. These financing offers were not economically viable as they included substantial fees and above-market interest rates, even after the payment up front of as many as seven "points", and they were not proposed to extend for a long term duration.

30.     The second category of inquiries was from parties interested in renting various parts of the building. Yet, despite the multitude of inquiries, no offers to rent part of the property have materialized to date. Many of the rental opportunities would have assisted the Debtor in paying its ongoing monthly debt obligations, but would not have provided a solution to reduce the Debtor's obligations to its creditors, including MKF, the second mortgagee. Moreover, many of the potential tenants requested significant periods of free rent or the significant expenditure of funds by the Debtor to renovate their space prior to the potential tenants taking occupancy. Further, once foreclosure proceedings were commenced and the rent receiver was appointed, many of the potential tenants lost interest in the property, presumably because any foreclosure of a prior mortgage could have cut off their leasehold rights.

31.     The last category of inquiries was from parties interested in purchasing the property. The Debtor sent out multiple informational packages, to any interested party, consisting of the rent roll for 639 West 46th Street, floor plans, current mortgage payoff information, and information regarding the proposed rezoning of the New York City district covering the 46th street property which would make an expansion more favorable. A copy of these materials is annexed as **Exhibit 1**.

32.     Further, the Debtor never listed the Property for sale nor gave any exclusive listing rights to any brokers because there was more than sufficient interest in the Property

without such listings.  Indeed, many attorneys approached the Debtor with clients interested in purchasing the Property.  One attorney even independently prepared a comprehensive prospectus that was then circulated to several people who might be interested in the property.  A copy of this prospectus is annexed as **Exhibit 2**.

33.     Of all offers made, no offer was more favorable than the proposed debtor-in-possession financing from Griffon.  Specifically, some parties made offers that were either less than the Debtor's original 1993 purchase price for the building or were insufficient to satisfy the outstanding property taxes and mortgage liens on the property.  Others offered a small amount of cash up front with long term purchase money financing, which would not have provided the funds necessary for the Debtor to either pay off or negotiate new payment terms with its creditors.  Moreover, most of the offers made on the property had significant conditions attached to them which would result, at the very least, in significant delays in closing far beyond the time constraints imposed by the Bankruptcy Code.

34.     The Debtor has extensively negotiated with Griffon over several months to arrive at the proposed debtor-in-possession financing.  The original Griffon-proposed deal required the Debtor to relinquish the Property via a Deed in Lieu of Foreclosure and the Debtor and Mr. Toro's other entities were to be given a certain period of time to vacate the Property.  Through negotiation, the Debtor increased its retained equity interest in the Property from a nominal amount to 50% of the proposed new entity to be formed.  The Debtor further negotiated with Griffon to resolve certain IRS tax issues, as well as to accommodate the New York State tax lien on the Property.

35.     The proposed financing deal with Griffon, in combination with the Chapter 11 Plan which the Debtor filed on July 12, 2011, would permit the Debtor to maintain an equity

interest in the Property, as well as satisfying all liens on the Property. Even after entertaining more than thirty-five offers for the Property, many of which did not go beyond one initial offer, the Griffon offer is significantly more favorable to the Debtor and the Debtor's estate. More importantly, because the Griffon offer was not made on a take-it-or-leave-it basis, the Debtor was able to negotiate the terms of the agreement with Griffon to maximize the benefit to the Debtor's estate and to obtain a proposed 100% payments to creditors.

**POINT III: MKF CANNOT MEET THE BURDEN OF PROOF REQUIRED UNDER LAW TO ESTABLISH BY CLEAR AND CONVINCING EVIDENCE THAT CAUSE EXISTS FOR CONVERSION OR DISMISSAL OF THIS CASE OR THE APPOINTMENT OF A TRUSTEE**

36.     Although MKF characterized its pleading as a "Joinder" in the motion of the United States Trustee to convert or dismiss this case, the MKF Joinder seeks to add numerous new claims and contentions were not claimed or alleged by the United States Trustee. It further attempts to rely on cases which granted the appointment of a Chapter 11 trustee, pursuant to 11 U.S.C. § 1104, claiming that such authorities also supposedly support its claim for conversion to Chapter 7 and the appointment of a Chapter 7 Trustee.

37.     In making these new claims in support of its so-called "Joinder" in the United States Trustee's Motion to Convert or Dismiss, MKF filed an Affidavit of Service reflecting that it was served solely upon the Office of the United States Trustee, two counsel for the Debtor and counsel for Griffon. See Docket No. 27. Because Bankruptcy Rule 2002(a)(4) expressly requires that parties seeking dismissal or conversion of a case give "all creditors and indenture trustees at least 21 days' notice by mail" of their motions, the Debtor submits that MKF failed to properly serve notice upon parties in interest in this case of the new or additional claims which its Joinder seeks to raise.

38.     Additionally, the Debtor submits that MKF has failed to meet its burden of proof on any of the new or additional claims which it seeks to raise in support of its requests for conversion or dismissal.  In fact, many of its statements are premised upon wrong or incomplete statements of or understandings of the facts of this case.  For this reason, the Debtor addresses below each of the categories of claims or assertions which MKF has attempted to raise through its Joinder.

## A.     THERE HAS BEEN NO ABDICATION OF MANAGEMENT

39.     Paragraph 4 of MKF's Joinder falsely claims that the Debtor has completely abandoned and forfeited control over its operations in this case.  This is not accurate.  The Debtor's general partner remains Third Toro Real Estate Corp. ("the GP"), just as it was at the commencement of this case, before the time of the 2011 Voting Trust Agreement between Helmer Toro and Griffon which is discussed in MKF's Joinder.  The Debtor does not dispute that the control of the GP has changed, adding thereto 31 Rockaway Avenue LLC ("31 Rockaway") as an entity with the ability to appoint three directors to a voting trust, while Helmer Toro ("Mr. Toro") retains the ability to appoint two directors to the voting trust.

40.     31 Rockaway has no meaningful financial or ownership interest in the Debtor, but serves on behalf of the Debtor's first mortgagee, Griffon Cosmo ("Griffon"), to enhance management of the Debtor's property, which is its collateral.

41.     Mr. Toro was never designated in any way by the Bankruptcy Court or the UST as the nominee or individual solely responsible for performing the duties of the Debtor.  Mr. Toro remains active within the GP, although he does not have final control thereof.

42.     What MKF tries to characterize as some sort of "abandonment of fiduciary responsibilities" by Mr. Toro is actually just a change in the management control of Debtor's G.P., by a decision of the equity holder of the Debtor's GP.

43.     The United States Court of Appeals for the Second Circuit has long held that rules of corporate governance continue to operate in the context of a Chapter 11 proceeding.  In re: Johns-Manville Corporation, 801 F.2d 60, 64 (2d Cir. 1986).  This is the case, even when a Chapter 11 Debtor's shareholders choose to elect a new board of directors that changes the control of a corporation during a Chapter 11 proceeding.  In re: Potter Instrument Co., 593 F.2d 470, 475 (2d Cir. 1979); In re: Bush Terminal Co., 78 F.2d 662, 664-65 (2d Cir. 1935).

44.     The Second Circuit noted in In re: Johns-Manville Corporation, 801 F.2d at 64 that "As a consequence of the shareholders' right to govern their corporation, a prerogative ordinarily uncompromised by reorganization, 'a bankruptcy court should not lightly employ its equitable power to block an election of a new board of directors'", *quoting* In re Potter Instrument Co., 593 F.2d 470, 475 (2d Cir.1979)."  Yet that is precisely what MKF asks this Court to do.

45.     Griffon has been candid that it expects to become involved in the post-bankruptcy ownership of the Debtor or its real estate, in the form of a joint venture or otherwise, and the Voting Trust Agreement is properly a component thereof.

46.     In light of all of MKF's negative statements about Mr. Toro, the Debtor submits that Griffon would be a better fiduciary for the estate and for the protection of creditors than Mr. Toro, a trustee or MKF.  Griffon is successful real estate developer with a number of completed development projects.

47.     Griffon's affiliate, Delshah Capital ("Delshah"), has extensive skill and experience in managing real estate assets, owning more than a million square feet of residential and commercial properties in the five boroughs of New York City, and is particularly skilled in repositioning and redeveloping assets.

48.     Delshah is controlled by Michael K. Shah ("Shah").  His background is beyond reproach.  None of the projects where Michael Shah was the managing member have resulted in bitter legal controversies with investors or those to whom he has owed a fiduciary duty, due to his history of dealing fairly with partners and investors.  Shah understands his role with respect to this bankruptcy estate as he is a former bankruptcy mergers and acquisitions lawyer having worked at Wachtel Lipton Rosen & Katz (and having graduated first in his class at Harvard Law School).

49.     Mr. Toro recognized that a change of management was critical given the controversy in these cases.  As noted in Point II above, Mr. Toro and the Debtor undertook substantial efforts to obtain the best financing, leasing or sale arrangement which would both permit the Debtor to pay its creditors in full and preserve value for equity holders.  After having "shopped" the Debtor's property to others and after considering <u>both</u> MKF and Griffon as potential partners, Mr. Toro concluded that it was not only best for the estate and creditors, but also for equity holders, to have Shah be given a degree of control of ongoing operations of the Debtor, (particularly given Shah's demonstrated real estate development skill, his understanding of his role as a fiduciary in bankruptcy and his reputation for integrity in dealing with his investors/partners).

50.     Paragraph 46 of MKF's Joinder baldly asserts, without citing any evidence or proof, that the "assignment (sic) deprived the Debtor of any ability to discharge its fiduciary

duties to all creditors and stakeholders …."  MKF ignores that both Griffon and MKF proposed to Mr. Toro and the Debtor a "loan-to-own" disposition of their mortgages by the Debtor. Viewed with that backdrop, it is apparent that MKF's complaints are really just the complaints of a disappointed suitor.

51.     There is no evidence that Shah/Griffon will have any less willingness, ability or obligation to conform to fiduciary duty than any other party (such as MKF) who seeks to acquire equity in a Chapter 11 debtor entity during the case.

**B.      THE CONSIDERATION FOR THE VOTING TRUST AGREEMENT WAS GRIFFON'S AGREEMENT TO PROVIDE THE DIP LOAN TO THE DEBTOR AND ITS AGREEMENT TO FUND A PLAN OF REORGANIZATION FOR THE DEBTOR**

52.     Paragraph 7 of MKF's Joinder argues that the Debtor did not receive any consideration for the transfer of control of the GP under the Voting Trust Agreement.  This argument ignores the fact that the Debtor did not make any transfer; the shareholder of the Corporate General Partner of the Debtor made a transfer by which Shah/31 Rockaway acquired the ability to appoint the majority of the directors in the GP.

53.     Furthermore, Mr. Toro personally received no payment or other compensation for consenting to the Voting Trust Agreement.  The only consideration given for this change in control was (1) Griffon's willingness to enter into the DIP Financing Agreement which will permit the Debtor to pay off MKF in full on payment terms less onerous than those of the current Second Mortgage held by MKF (2) Griffon's willingness to fund a plan of reorganization in which all creditors of the Debtor would be paid 100% (recognizing that the IRS is a creditor of Mr. Toro, individually, not a creditor of the Debtor) and (3) existing equity holders would retain 50% of the reorganized Debtor.  The Debtor submits that the bulk of the consideration for this

transaction will be going to the Debtor's creditors, including MKF, not current equity, which is giving up a percentage of equity.

54.     MKF argues that the Debtor surrendered its affirmative defenses and counterclaims to Griffon's First Mortgage, without court approval, in exchange for the Voting Trust Agreement.  This argument ignores the fact that those affirmative defenses and counterclaims were previously judicially dismissed by the Supreme Court in the New York County foreclosure action bought by Griffon (the "Foreclosure Action).

55.     In Justice Carol Edmead's April 6, 2011 decision on summary judgment motion in the Foreclosure Action, all of the Debtor's affirmative defenses and counterclaims were dismissed.  The decision is attached hereto as Exhibit 3.  Thus, the Voting Trust Agreement and the DIP Loan Agreement simply preserved the status quo.

56.     Moreover, the Debtor submits that any waiver of any remaining defenses and counterclaims by the Debtor has been submitted to the Bankruptcy Court for approval, through the DIP Loan Motion, where the acknowledgement of such a lack of defenses or counterclaims is a part of the Debtor's motion for approval of that financing.

57.     To the extent that MKF seeks to paint the Voting Trust Agreement as some kind of "overreaching" by Griffon, it is ironic to note that since the filing of its Joinder, representatives of MKF have been regularly calling Mr. Toro, trying to incentivize him to breach the Voting Trust Agreement, in favor of permitting MKF to pursue some plan whereby it would acquire equity in the Debtor.  The Debtor submits that this course of conduct by MKF demonstrates that all of MFK's objections in its Joinder are not motivated by its concerns as a creditor of the Debtor, which the Debtor proposes to pay in full as soon as possible, but solely by its disappointment that it is not standing in the shoes of Griffon.

**C. MKF'S CITATIONS TO AUTHORITY REGARDING APPOINTMENT OF CHAPTER 11 TRUSTEES ARE NOT APPLICABLE AND DO NOT REQUIRE CONVERSION TO CHAPTER 7 OR APPOINTMENT OF A TRUSTEE IN THIS CASE**

58.     MKF contends that facts exist in this case which would support the appointment of a Chapter 11 Trustee, which it contends are also grounds for the conversion or dismissal of this case. The Debtor submits that MKF cannot meet the burden of proof required under law to establish by clear and convincing evidence that cause exists for conversion or dismissal of this case or the appointment of a trustee.

59.     The Bankruptcy Code empowers a bankruptcy court to appoint a trustee in a Chapter 11 proceeding under certain circumstances. Section 1104 of the Code provides:

> (a) At any time after the commencement of the case but before confirmation of a plan, on request of a party in interest or the United States trustee, and after notice and a hearing, the court shall order the appointment of a trustee—

> (1) for cause, including fraud, dishonesty, incompetence, or gross mismanagement of the affairs of the debtor by current management, either before or after the commencement of the case, or similar cause, but not including the number of holders of securities of the debtor or the amount of assets or liabilities of the debtor; or

> (2) if such appointment is in the interests of creditors, any equity security holders, and other interests of the estate, without regard to the number of holders of securities of the debtor or the amount of assets or liabilities of the debtor.

11 U.S.C. § 1104(a).

60.     The appointment of a Chapter 11 trustee has been described as an "extraordinary act." In re Ionosphere Clubs, Inc., 113 B.R. 164, 167 (Bankr. S.D.N.Y.1990); In re Deena Packaging Indus., Inc., 29 B.R. 705, 706 (Bankr. S.D.N.Y.1983); see also In re Sharon Steel Corp., 871 F.2d 1217, 1225 (3d Cir.1989) (appointment of a trustee "should be the exception, rather than the rule").

61.    Because the appointment of a trustee is such an extraordinary remedy, the vast majority of courts have held that the moving party must show that cause for appointment of a trustee exists by clear and convincing evidence.  Official Comm. of Asbestos Claimants v. G–I Holdings, Inc. (In re G–I Holdings, Inc.), 385 F.3d 313 (3d Cir.2004); In re Sharon Steel Corp., 871 F.2d 1217 (3d Cir.1989); In re Adelphia Comm. Corp., 336 B.R. 610, 655 (Bankr.S.D.N.Y. 2006), aff'd 342 B.R. 122 (Bankr. S.D.N.Y. 2006).

62.    The focus on a motion for appointment of a Chapter 11 trustee is on the debtor's current activities, not allegations of past misconduct, and "[s]peculation that a debtor may do something in the future does not overcome the strong presumption that the debtor should be permitted to remain in possession in a Chapter 11 case or justify the additional costs of a trustee."  In re Sletteland, 260 B.R. 657, 672 (Bankr. S.D.N.Y. 2001).

63.    The decision whether to appoint a trustee is fact intensive and the determination must be made on a case by case basis.  In re Sharon Steel Corp., 871 F.2d at 1226.  The court must determine whether the totality of the circumstances warrant appointment of a trustee.  In re Sharon Steel Corp., 871 F.2d at 1228.

64.    Paragraph 40 of MKF's Joinder references In re Bellevue Place Assocs., 171 B.R. 615 (Bankr. N.D. Ill. 1994), a Bankruptcy Court decision from 17 years ago from a different state and Circuit as supporting MKF's claims.  Bellevue can easily be distinguished.

65.    In Bellevue, the debtor reached a pre-petition agreement with its secured creditor that a subsidiary of the secured creditor would manage the debtor.  Among the provisions of the "whereas clauses" of the agreement were the following:

>    WHEREAS, the parties intend, acknowledge and agree that
>    Meridien will act solely in Meridien's interests as provided herein,
>    without regard to the interests of the BPA Parties [debtor];

> Whereas the parties do not intend that Meridien shall have any
> duties, fiduciary or otherwise (whether arising by law, contract or
> otherwise), to any BPA Party.

171 B.R. at 620.

66.     The Bankruptcy Court in <u>Bellevue</u> thus concluded that a Chapter 11 Trustee was warranted because the agreement permitted "Meridien, through its control of BPA, to act solely in Meriden's self-interest without resort to BPA's interest. . . . " 171 B.R. at 624.

67.     The Bankruptcy Court in <u>Bellevue</u> did not convert the case to Chapter 7, and its primary concern was that the manager contractually agreed to act **only** for its self-interest.

68.     Griffon is not a shareholder and holds no equity interest in the Debtor.  Griffon is a secured creditor; its involvement in management creates fiduciary duties and Griffon has so recognized such duties and the Debtor has proposed a plan which would pay all creditors of the Debtor in full (recognizing that the IRS claims for trust fund taxes of other corporations is a creditor of Mr. Toro, but not the Debtor), .

69.     Griffon has never hidden its "loan to own" intentions.

70.     The rights of MKF as a secured creditor are wholly adequately protected by the 100 percent payment proposed by the Debtor through the DIP Loan Agreement.

71.     MKF's Joinder also cites to <u>In re IPOFA West Oaks Mall, L.P.,</u> 2007 WL 3223295 (Bankr. E.D. Va. 2007) in which a Chapter 11 Trustee was appointed because no one was left in charge or control of the Virginia debtor after the "designated representative" entered into an agreement to convey all his right, title and interest in certain assets including his ownership interest in the debtor to several other debtors (which he owned) in pending New York bankruptcy cases.  A Chapter 11 Trustee had been appointed for the New York debtors, but that Trustee had not decided whether to assume control of the Virginia debtor.  Thus, to fill the void

in management, the Virginia Bankruptcy Court granted the motion to appoint a Chapter 11 Trustee.

72.     The Bankruptcy Court in <u>IPOFA</u> did not convert the case to Chapter 7, and its primary concern was that there was no-one in actual control of the debtor.

73.     Shah/Griffon/31 Rockaway are responsible to this one Court for this one debtor and fully acknowledge their fiduciary duties to creditors.  For that reason, the Debtor filed on July 12, 2011 a proposed plan of reorganization which proposes to pay all allowed claims against the Debtor in full.

74.     The Debtor submits that there is no basis which has been proven by MKF supporting the appointment of a Trustee by "clear and convincing" evidence and its request for conversion or dismissal of this case is not warranted on the facts of this case.

**D.     THE RENT CHARGED TO AFFILIATES OF THE DEBTOR IS AT MARKET RATE, FOR THE AMOUNT OF SPACE LEASED**

75.     Paragraph 2 of MKF's Joinder complains that prior to the commencement of this case, Mr. Toro caused the Debtor to drastically reduce the monthly rent it charged Sixth Toro and that Mr. Toro signed the Lease Modifications for both the Debtor and Sixth Toro .  MKF does not acknowledge that this was not a rent reduction for the same space.  In fact, the rent referenced (incorrectly) in the MKF's Joinder as monthly rent (actually annual rent) was for the whole building, not just for the relatively much smaller space that Sixth Toro currently occupies on the first and second floors (1400 and 6500 square feet, respectively).  Increases from the pre-petition monthly rent have  been negotiated with Griffon to $9,400 and $13,600, respectively, and  will be implemented upon closing of the DIP Loan Agreement.

76.     Paragraph 14 of MKF's Joinder claims that on June 25, 2010 Mr. Toro caused the Debtor and Sixth Toro to enter into a Lease Modification that he signed for each entity whereby the rent payable to the Debtor was drastically reduced from $416,000 to $60,000 per month.

77.     This is a misstated recitation of rent per month which is actually per year; again, the original lease was for the entire building, the new lease is for just the smaller retail spot, and in fact, the Debtor has raised the rent for the retail store and the space on the premises' second floor.

78.     On the new leases, Mr. Toro will sign for the tenant but 31 Rockaway, an entity on which Shah has the final say, will sign for the Landlord.

79.     Thus, the myth that the monthly rent for Sixth Toro was permanently reduced by Mr. Toro from $416,000 to $60,000 per month has been exploded:  (i) initially those amounts from June, 2010 are annual not monthly; (ii) the $60,000 per year rent is for only 1400 square feet of first floor rather than the full approximately 25,000 square feet of the first two floors; (iii) the rent, even for the retail space on the first floor, is now being increased by almost 100%; (iv) Sixth Toro will be paying market rent for its space on the second floor (i.e., $13,600 for 6500 square feet); and (v) lastly, even these charges are without the further tax and common area maintenance which will be included in the occupancy charges.

80.     MKF's complaints of Mr. Toro controlling both Sixth Toro (Mr. Toro's operating entity renting space in the Debtor) and the Debtor are obviated by that control given to Shah/31 Rockaway by the Voting Trust Agreement.

81.     To the extent MKF's Joinder argues for separation of the bagel operation from the realty management, the Voting Trust Agreement has already achieved that result.

WHEREFORE, the Debtor respectfully requests that this Court enter an order: (1) denying the United States Trustee's motion to convert or dismiss this case; (2) denying MKF's Joinder thereto; (3) approving the Debtor's proposed DIP Finance Loan with Griffon and (4) granting to the Debtor such other and further relief as this Court deems just and proper.

Dated: New York, New York  
      July 15, 2011

**KORNFELD & ASSOCIATES, P.C.**

By: _____/s/ Randy M. Kornfeld_____  
    Randy M. Kornfeld, Esq.  
    *Attorneys for Debtor and*  
    *Debtor-in-Possession*  
    570 Lexington Avenue, 17th Floor  
    New York, New York 10022  
    Telephone: (212) 759-6767