FOX ROTHSCHILD LLP
Yann Geron
Erin Zavalkoff-Babej
Kathleen M. Aiello
100 Park Avenue, 15th Floor
New York, New York 10017
Phone: 212-878-7900

*Attorneys for Yann Geron, Chapter 7 Trustee*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------x

| | | |
|---|---|---|
| In re | : | Chapter 7 |
| | : | |
| THIRD TORO FAMILY LIMITED PARTNERSHIP, | : : | Case No. 11-11723 (SHL) |
| | : | |
| Debtor. | : | |

------------------------------------------------------x

### CHAPTER 7 TRUSTEE'S MOTION FOR ORDER AUTHORIZING TRUSTEE'S USE OF CASH COLLATERAL PURSUANT TO 11 U.S.C. § 363

TO THE HONORABLE SEAN H. LANE
UNITED STATES BANKRUPTCY JUDGE:

Yann Geron (the "Trustee"), as chapter 7 trustee of the estate of Third Toro Family Limited Partnership, the above-captioned debtor (the "Debtor"), by his attorneys, Fox Rothschild LLP, filed this motion for an order authorizing the Trustee's use of cash collateral pursuant to 11 U.S.C. § 363 (the "Motion"). In support of this Motion, the Trustee respectfully represents as follows:

## JURISDICTION

1. This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. Venue of the Debtors' chapter 7 case, and this Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

2. The statutory predicate for the relief sought herein is 11 U.S.C. §§ 363 and 364 and Fed. R. Bankr. P. 4001(b).

## BACKGROUND

3. On April 13, 2011 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code"). On July 29, 2011 (the "Conversion Date"), Debtor's Chapter 11 case was converted to one under Chapter 7 of the Bankruptcy Code. On August 1, 2011, Yann Geron was appointed as interim chapter 7 trustee in this Chapter 7 case. Mr. Geron has since qualified, and is currently acting, as permanent chapter 7 trustee of this estate.

4. The Debtor's Case is one of four related cases filed by Helmer Toro in connection with his H&H bagel franchise. The Debtor's case is a single asset real estate case. Specifically, the Debtor's only tangible asset is a building located on the west side of Manhattan, on 46th Street and the West Side Highway (the "Real Property"). The Real Property once housed the entire H&H bagel factory and now is leased to a H&H bagel retail store and other production operations, as well a storage space for food vendor carts and billboard space on the roof of the building.

5. There are currently four tenants occupying the Real Property, including Sixth Toro Family LP, which purportedly leases a portion of the Real Property to serve as a the retail

2

NY1 541463v5A 10/12/11

location for one of the H&H bagel stores. The Debtor's general operations consist of collecting monthly rent from its tenants and providing for the general maintenance of the Real Property.

6. On its schedules of assets and liabilities filed with the Court on May 13, 2011 [DE 11] (the "Schedules"), the Debtor estimated the value of the Real Property at approximately $7,500,000. In subsequent filings in this case, the holder of the Second Mortgage (defined below) on the Real Property has suggested the Real Property may be worth considerably more than this amount. Indeed, the Trustee's initial marketing efforts appear to bear out a market value for the Real Property considerably above $7 million.

7. The alleged liens against the Real Property are estimated to be $7,000,000. Accordingly, the Trustee intends to market and sell the Real Property and use the sale proceeds to pay creditors of the bankruptcy estate. In this regard, on August 12, 2011, the Trustee filed an application with this Court to retain GA Keen Realty Advisors, a division of Great American Group ("Keen") to act as the Trustee's broker, to market and sell the Real Property [DE 52]. On August 17, 2011, this Court entered an Order approving Keen's retention. [DE 54].

8. Based upon the Trustee's knowledge of the Debtor's business, the Trustee determined that it is in the best interest of the estate to continue operating the Debtor for a limited period of time pending the sale of the Real Property. In this regard and simultaneously herewith, the Trustee is filing a motion for authority pursuant to Section 721 of the Bankruptcy Code, to operate the Debtor for a limited period time through the closing on the sale of the Real Property.

**The Debtor's Pre-Petition Secured Debt**

9. In its Schedules, the Debtor identified the following creditors holding secured claims against the Real Property, aggregating $7 million: (i) a first-priority mortgage (the "First

3

Mortgage") and security agreement with Griffon Cosmo, LLC ("Griffon"), in the amount of approximately $5.3 million; (ii) a second-priority mortgage ("Second Mortgage" and together with the First Mortgage, the "Mortgages") and security agreement with MKF Management LLC, in the amount of $1.2 million ("MKF" and together with Griffon, the "Mortgagees") and (iii) a third-priority mortgage with the New York State Department of Taxation for an amount of approximately $500,000.

10. On March 28, 2006, the Debtor as borrower executed a note in favor of First American International Bank as lender, ("First American"), for the original principal amount of $4.0 million with interest as set forth therein to be paid in monthly payments commencing May 1, 2006 and continuing monthly thereafter until April 1, 2031. Subsequently, on May 28, 2010, First American and Griffon entered into an Assignment and Assumption Agreement pursuant to which, Griffon acquired all of First American's right, title and interest in and to the First Mortgage.

11. Later on or around June 9, 2008, the Debtor as borrower executed a note in favor of Benedict A. Silverman as lender, ("Silverman"), for the original principal amount of $1.0 million with interest at a rate of 16% per annum. Subsequently, on April 11, 2011, Silverman and MKF entered into an Assignment and Assumption Agreement pursuant to which, MKF acquired all of Silverman's right, title and interest in and to the Second Mortgage.

**The Rents as Cash Collateral**

12. The Mortgagees have a purported interest in any rents (the "Rents") collected from the tenants of the Real Property (the "Cash Collateral"). Specifically, on March 28, 2006, the Debtor assigned to First American, Griffon's predecessor in interest, as additional security for the payment and performance of its obligations under the First Mortgage, all of its right, title

4

and interest in any and all leases, subleases, letting and licenses of or affecting the Real Property (the "First Mortgage Lease Assignment"). The First Mortgage Lease Assignment was recorded on July 11, 2007 in the Office of the City Register of the City of New York in the State of New York. On May 28, 2010, First American assigned, transferred and endorsed over to Griffon its right, title and interest in the First Mortgage Lease Assignment.

13. In this regard, on June 9, 2008, the Debtor additionally assigned Silverman as additional security for the payment and performance of its obligations under the Second Mortgage, all of its right, title and interest in any and all leases, subleases, letting and licenses of or affecting the Real Property (the "Second Mortgage Lease Assignment" and together with the First Mortgage Lease Assignment, the "Lease Assignments"). The Second Mortgage Lease Assignment was recorded on July 23, 2008 in the Office of the City Register of the City of New York in the State of New York. On April 11, 2011, Silverman assigned, transferred and endorsed over to MKF its right, title and interest in the Second Mortgage Lease Assignment.

14. Prior to the Petition Date, on or about August 16, 2010, the State Court appointed Lise Hunter (the "Receiver") as a receiver to manage the Debtor's affairs and collect the Rents. The Receiver's appointment was made in connection with a foreclosure action commenced against the Debtor by First American, predecessor-in-interest to the holder of the First Mortgagee. That foreclosure action was terminated in June 2011 by stipulation between the parties.

15. The Trustee has obtained an accounting from the Receiver who consented to and has turned-over to the Trustee approximately $249,000 representing Rents collected. To the extent these funds and additional funds collected by the Trustee on account of Rents are pledged as collateral to the Mortgagees, these funds may constitute Cash Collateral.

5

16. As explained in further detail below, the Trustee requires use of Cash Collateral. However, despite his attempts to negotiate the terms of an agreement for the use of Cash Collateral with the Mortgagees, the Trustee has not been able to do so as of the date of this Motion. Since the Mortgagees have not consented to the use of these funds under the terms proposed by the Trustee, the Trustee has been compelled to make this Motion.

**RELIEF REQUESTED**

**A.  The Proposed Use of Cash Collateral Is Appropriate and Should be Authorized**

17. Section 363(c)(2) of the Bankruptcy Code sets forth the requirements for a debtor's proposed use of cash collateral, and provides, in pertinent part that:

> [t]he trustee [or debtor in possession] may not use, sell, or lease cash collateral ... unless – (A) each entity that has an interest in such cash collateral consents; or (B) the court, after notice and a hearing, authorizes such use, sale, or lease in accordance with the provisions of this section.

*See* 11 U.S.C. § 363(c)(2).

18. Section 105(a) of the Bankruptcy Code also allows that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. § 105(a).

19. Unless he has the immediate ability to use Cash Collateral, the Trustee submits that he cannot meet the Debtor's ongoing post-petition obligations nor take the necessary steps to prepare and market the Real Property for sale. In the absence of such use, immediate and irreparable harm will result, which will impact all of the estate's creditors, including the Mortgagees, whose collateral will be adversely impacted.

20. The Trustee intends to use the Cash Collateral for the payment of reasonable and necessary expenses in connection with the preservation and upkeep of the Real Property,

including, but not limited to, insurance premiums, management fees, fees due and owing to the Receiver, certain attorney fees for the Debtor's landlord-tenant counsel, marketing costs and other budgeted expenses in conformance with the Budget (defined herein). The Trustee respectfully submits that the proposed use of Cash Collateral is necessary to preserve the Real Property, which constitutes the Debtor's only tangible asset, and will thus avoid immediate and irreparable harm to the Debtors' estate and creditors, including the Mortgagees. Such use prejudices no one; it affirmatively and directly benefits the estates and creditors by enhancing the prospects of a successful sale of the Real Property.

B.     **Adequate Protection Is Not Necessary Under the Circumstances**

21.     Section 363(e) of the Bankruptcy Code provides that "on request of an entity that has an interest in property … proposed to be used, sold, or leased, by the trustee [or debtor in possession], the court, with or without a hearing, shall prohibit or condition such use, sale, or lease as is necessary to provide adequate protection of such interest." 11 U.S.C. § 363(e). Examples of adequate protection are provided in Section 361 of the Bankruptcy Code and include, but are not limited to: (1) "periodic cash payments" to the extent that such use "results in a decrease in value of such entity's interest in the property;" (2) "additional or replacement lien[s] to the extent that the use [of cash collateral] will cause a decrease in the value of such entity's interest in the property;" and (3) "granting such other relief … as results in the realization by the entity of the indubitable equivalent of such entity's interest in the property." 11 U.S.C. § 361. Bankruptcy courts have broad flexibility under section 361 in deciding what constitutes adequate protection:

> This section specifies the means by which adequate protection may be provided. It does not require the court to provide it. To do so would place the court in an administrative role. Instead, the trustee or debtor in possession will provide or propose a protection method. If the party that is affected by the proposed action objects,

7

> the court will determine whether the protection provided is adequate. The purpose of this section is to illustrate means by which it may be provided and to define the contours of the concept.

H.R. Rep. No. 95-595, at 338, 95th Cong., 1st Sess. (1977); *see also* <u>Resolution Trust Corp. v. Swedeland Dev. Group, Inc. (In re Swedeland Dev. Group, Inc.)</u>, 16 F.3d 552, 564 (3d Cir. 1994) ("[A] determination of whether there is adequate protection is made on a case by case basis.").

22. The principal purpose of adequate protection is to safeguard the interest of the secured creditor in the particular collateral against diminution in the value of such interest. *See* <u>In re Swedeland Dev. Group, Inc.</u>, 16 F.3d at 564 ("[T]he whole purpose of adequate protection for a creditor is to insure that the creditor receives the value for which he bargained pre-bankruptcy.") (quoting <u>In re O'Connor</u>, 808 F.2d 1393, 1396 (10th Cir. 1987)); *accord* <u>In re DeSardi</u>, 340 B.R. 790, 804 (Bankr. S.D. Tex. 2006) ("The purpose of adequate protection is to assure that the lender's economic position is not worsened because of the bankruptcy case."); <u>In re Hollins</u>, 185 B.R. 523, 528 (Bankr. N.D. Tex. 1995) ("Adequate protection seeks to protect a creditor from an [*sic*] decline in the value of its collateral . . . .").

23. Here, the Trustee submits that the available evidence indicates that the Mortgagees are significantly oversecured. Their respective liens total approximately $7 million, while the available evidence is that the Real Property is worth millions more than this amount. Thus, the facts indicate that the Mortgagee's secured claims will not deteriorate post-petition such that adequate protection would be necessary.

24. In the unlikely event that the Mortgagees were to demonstrate that their claims were deteriorating post-petition, such as by being deprived of the use of their capital which

8

would be realized by the mortgage payments, for example, any such alleged losses would be nominal, and would in any event be covered by the unencumbered value of the Real Property.

25. Furthermore, the Trustee is seeking to use the Cash Collateral precisely for the purpose of preserving and liquidating the Mortgagees' collateral, and thus, any use of Rents for this purpose not only does not reduce the value of the secured claims, but also in fact enhances the value of those claims. The Trustee further contends that limited use of Cash Collateral (i) to preserve the secured collateral pending its sale and (ii) to market the Real Property in a manner that would achieve the highest and best offer possible could not arguably diminish the Mortgagees' lien claims. To the extent that it may do so arguably, the Trustee submits that any portion of the Cash Collateral use which is not directly attributable to maintenance of the collateral can be added as an additional amount to the Mortgagees' claims. This may be more of a theoretical exercise or may involve nominal amounts since it would appear that the Trustee's efforts in this case will in the end very much inure to the benefit of the Mortgagees and the Debtor's other creditors.

26. Courts have routinely held that adequate protection may be demonstrated by a showing that the going concern value of the debtors, or the value of the lender's collateral, is preserved by the debtor's continuing operations and use of cash collateral. *See, e.g.*, In re 499 W. Warren St. Assocs., Ltd. P'ship, 142 B.R. 53, 56-57 (Bankr. N.D.N.Y. 1992) (finding secured creditor's interest in collateral adequately protected when cash collateral was applied to normal operating and maintenance expenditures on collateral property); In re Constable Plaza Assocs., L.P., 125 B.R. 98, 105 (Bankr. S.D.N.Y. 1991) (debtor entitled to use cash collateral to operate and maintain office building, thereby protecting secured lender's collateral).

9
NY1 541463v5A 10/12/11

27. More significantly, the principal adequate protection for the Mortgagees is the use of Cash Collateral in accordance with a budget (the "Budget"), a copy of which is annexed hereto as Exhibit "A". The Trustee submits that Budget provides for expenditures to continue to manage and operate the Real Property while taking the necessary measures to prepare and market the Real Property for eventual sale. Such expenditures include, but are not limited to: (i) the managing agent's monthly fee for its continued maintenance of the Real Property; (ii) costs associated with the preparation of a property condition report and a phase 1 environmental assessment report, which reports are necessary for the marketing and sale of the Real Property, (ii) an increase in insurance coverage for the Real Property and (iii) costs and fees associated with the marketing of the Real Property for sale. The Trustee contends that these proposed cash expenditures are necessary to preserve and maintain the value of the Real Property collateral and the interests therein of the Mortgagees. Moreover, use of Cash Collateral in the manner and for the purposes proposed will allow the Trustee to properly market the sale of the Real property, which will likely increase the overall value of the Debtor's Real Property and enhance the chances of a successful sale of the Real Property for the highest and best offer.

28. If the Trustee is precluded from making expenditures necessary to maintain the Real Property, the all creditors — secured and unsecured — will be harmed. *See, e.g.,* In re Aqua Assocs., 123 B.R. 192, 196 (Bankr. E.D. Pa. 1991) ("The important question, in determination of whether the protection to a creditor's secured interest is adequate, is whether that interest, whatever it is, is being unjustifiably jeopardized.") (citing In re Grant Broad. of Philadelphia, Inc., 71 B.R. 376, 386-89 (Bankr. E.D. Pa. 1987), *aff'd*, 75 B.R. 819 (E.D. Pa. 1987), and In re Alyucan Interstate Corp., 12 B.R. at 809-12).

NY1 541463v5A 10/12/11

### (i) The Mortgagees are Provided Replacement Liens and Superpriority Claims

29. Additionally, to the extent this Court determines that the Mortgagee's respective claims are somehow affected by the Trustee's proposed use of Cash Collateral, such that adequate protection is necessary, the Trustee proposes to provide adequate protection to the Mortgagees in the form of: (i) replacement liens on and security interests in (the "Adequate Protection Liens") the Real Property and proceeds thereof. (*see* 11 U.S.C. § 361(2) (providing for replacement liens as a form of adequate protection)); and (ii) allowed superpriority claims pursuant to section 507(b) of the Bankruptcy Code, senior to all other administrative claims, except as set forth below. Such adequate protection is commonplace. *See*, *e.g.*, MBank Dallas, N.A. v. O'Connor (In re O'Connor), 808 F.2d 1393, 1396-98 (10th Cir. 1987) (allowing the debtor to replace a lien on cash with a lien on property likely to be worth five times as much); In re Center Wholesale, Inc., 759 F.2d 1440, 1450 (9th Cir. 1985) (observing that a lien on additional property of the debtor would likely constitute adequate protection for the secured creditor).

30. Here, the Mortgagees, in addition to retaining a lien on the proceeds of their respective prepetition collateral, will also be provided additional adequate protection in the form of Adequate Protection Liens on any other collateral which may be generated during this case, as well as superpriority claims. *See*, *e.g.*, In re O'Connor, 808 F.2d at 1396-98 (allowing the debtor to replace a lien on cash with a lien on property likely to be worth five times as much); In re Center Wholesale, Inc., 759 F.2d 1440, 1450 (9th Cir. 1985) (observing that a lien on additional property of the debtor would likely constitute adequate protection for the secured creditor).

NY1 541463v5A 10/12/11

**The Rents Constitute Property of the Estate**

31. The assignments of Rents under the Mortgages need to be analyzed in light of this Court's decision in <u>Soho 25 Retail, LLC v. Bank of America, N.A.</u> (<u>In re Soho 25 Retail, LLC</u>), 2011 WL 1333084 (Bankr. S.D.N.Y. 2011) (Lane Bankr. J.). In <u>Soho 25</u>, this Court found that the language of the agreement between the debtor and its lender was an absolute assignment of rents, and thus, that the debtor was precluded from using those rents because they were not property of the estate under Section 541 of the Bankruptcy Code. <u>Id.</u> at 8-9. The Trustee submits that, while the facts of <u>Soho 25</u> and this case appear aligned, there is at least one apparent distinction which leads to a different result.

32. In <u>Soho 25</u> and in this case, the "Whereas" paragraphs contained in the relevant agreements provide that the rent assignment is being given as "additional security." In each of the assignments, the parties provided for the assignment and a license back to the debtor. Moreover, in both instances, the documents state that the assignment would be unconditional and not be interpreted as an assignment for additional security only, creating a present and absolute assignment. Notwithstanding these parallels however, it appears that a specific provision in Griffon's First Mortgage may distinguish the matter at hand. Here, the Assignment of Leases of Rents by dated March 28, 2006 itself provides:

> NOW THEREFORE …Assignor hereby transfers, sets over and assigns to Assignee as additional security and collateral for payment and performance of the Obligations, all right, title and interest of Assignor to, and under (i) the Leases and all amendments, extensions, modifications, replacements or renewals thereof, and (ii) the Rents.

*See* <u>Exhibit "B"</u> at page 2 (Emphasis added). This language goes beyond a recitation of intention in the "whereas" paragraph, and more clearly articulates the intent of the parties to have the assignment of Rents treated as a collateral assignment to secure repayment. At least, as to

Griffon's First Mortgage, therefore, the assignment of Rents appears to have been a conditional assignment, and as such, the Trustee submits that the Debtor's estate has a continuing property right in the Rents.

33. Moreover, even if assignment of Rents were deemed to constitute absolute assignments, such that the Debtor's collection of Rents would have been under a license, there remains the open question, whether the funds collected and held by the Receiver, which have been turned over to the Trustee are entirely non-estate property. Both Lease Assignments provide that Rents collected by the Debtor while the licenses are in effect, are to be held in trust for the benefit of the respective Mortgagees. Section 541 of the Bankruptcy Code defines property of the estate as including property in which the Debtor holds legal or equitable title. If the subject proceeds are held in trust for the Mortgagees, then the Debtor would hold a continuing interest in those funds. As such, those funds would constitute property of the estate.

34. Finally, while the assignment of Rents may be absolute as to future income, it may not apply in the same way to the funds collected by the Receiver. Section 543 (b)(1) provides that "a custodian shall (1) deliver to the trustee any property of the debtor held by or transferred to such custodian, or proceeds, products, offspring, rents or provides of such property…" 11 U.S.C. § 543(b)(1). The Rents were collected from the Real Property, which Real Property is indisputably property of the estate. Therefore, pursuant to Section 543(b)(1) of the Code, the Rents collected and held by the Receiver are required to be turned over to the Trustee. By requiring turnover to the Trustee of the Rents held by the Receiver, Section 543(b)(1) gives the estate at least a possessory interest in the Rents collected, which does not reconcile with the notion that the estate has no property interest in the Rents.

**The Need for Immediate Relief Pending a Final Hearing**

Bankruptcy Rule 4001(b) permits a court to approve a trustee's request for use of cash collateral during the 15-day period following the filing of a motion requesting authorization to use cash collateral, "only ... as is necessary to avoid immediate and irreparable harm to the estate pending a final hearing." Fed. R. Bankr. P. 4001(b)(2). In examining requests for interim relief under this rule, courts apply the same business judgment standard applicable to other business decisions. *See, e.g.*, In re Simasko Production Co., 47 B.R. 444,449 (D. Co. 1985), 47 B.R. at 449; *see also* In re Ames Dep't Stores Inc., 115 B.R. 34, 38 (Bankr. S.D.N.Y. 1990). After the 15-day period, the request for use of cash collateral is not limited to those amounts necessary to prevent immediate and irreparable harm to the debtor's business. Rather, a trustee is entitled to use cash collateral that it believes prudent in the operation of the debtor's business. See, e.g., Simasko, 47 B.R. at 449; Ames Dep't Stores, 115 B.R. at 36.

The reasons underlying the Trustee's need to use Cash Collateral are compelling. As virtually all of Debtor's cash is Cash Collateral, the Trustee's use of Cash Collateral is required generally to sustain and maintain the Real Property. The Trustee's provisions of adequate protection to the Mortgagees, including the use of Cash Collateral in accordance with an approved Budget and the provision of replacement liens as necessary, is sufficient to permit Trustee's use of Cash Collateral. Unless the Court authorizes Trustee's use of the Cash Collateral, the Trustee will be unable to pay for services and expenses necessary to maintain the value of Debtor's estate. Indeed, absent sufficient funds to prepare and market the Real Property, the Trustee's ability to maximize the value of the estate's sole asset will necessarily be imperiled. Therefore, approving the Cash Collateral Order thereby authorizing Trustee's use of Cash Collateral is in the best interests of Debtor's estate, the Mortgagees and the estate's creditors.

## NOTICE

35. Notice of this Motion has been given to (i) the United States Trustee; (ii) all persons who have filed a notice of appearance and request for service of papers in these cases; (iii) counsel for the Debtor; and (iv) counsel for the respective Mortgagees. In light of the nature of the relief requested herein, the Trustee submits that such notice is sufficient and proper and no other notice is necessary or required.

*WHEREFORE*, the Trustee respectfully requests that this Court grant the relief sought by this Motion and grant such other and further relief as this Court may deem just.

Dated: October 13, 2011
      New York, New York

*/s/ Yann Geron*
FOX ROTHSCHILD LLP
Yann Geron
Erin Zavalkoff-Babej
Kathleen M. Aiello
100 Park Avenue, 15th Floor
New York, New York 10017
Phone: 212-878-7900

*Attorneys for Yann Geron, Chapter 7 Trustee*